ELIZABETH L. NIX, Appellee, vs. MILTON L. THACKA-
BERRY, Appellant.

*Opinion filed June 16, 1909.*

1. APPEALS AND ERRORS—*Practice act of 1907 does not preclude Supreme Court from reviewing facts in chancery case.* Under the Practice act of 1907, as well as under the old Practice act, the finding of facts by the Appellate Court in chancery cases is not conclusive upon the Supreme Court, and the Supreme Court may, in chancery cases, determine the controverted questions of fact from the evidence in the record.

2. MORTGAGES—*effect of a condemnation judgment—formal release unnecessary.* Where a condemnation judgment is rendered against part of the lands covered by a trust deed the effect of such judgment is to transfer the lien from the land condemned to the fund, and no formal release by the trustee is necessary; and the fact the trustee executes a release does not require that the trustee shall be charged, on foreclosure, with more than the amount of the condemnation money, upon the ground that the trust deed provided he should not release the land for less than $12,000 whereas the condemnation money was less than $8000.

3. SAME—*when condemnation money need not be applied upon interest.* The contention, in a foreclosure case, that the condemnation money for part of the land should have been credited upon interest due and not wholly upon the principal, which course would have discharged the unpaid interest and removed the ground for foreclosure, cannot be sustained, where such condemnation money was not paid to the complainant by the county treasurer until after the bill was filed.

4. SAME—*defendant cannot complain of mistake which has resulted beneficially to him.* A defendant in a proceeding to foreclose a trust deed has no ground to complain of the method of computing interest, where, if any mistake was made in such matter, it resulted beneficially to the defendant.

5. SAME—*what does not show a conspiracy to defraud nor amount to a release of the trust deed.* The fact that the agent for the owner of a trust deed, upon learning of a sale of certain of the lots covered thereby, makes an agreement with the purchaser stating that the trust deed was about to be foreclosed and that as soon as the complainant had received a deed by such foreclosure proceeding she would transfer such lots to such purchaser for a certain amount in cash and take a trust deed for the balance due,

does not show a conspiracy on the part of the agent and purchaser to defraud the maker of the trust deed nor amount to its release.

6. SAME—*a cross-bill should be filed in proper time.* While a cross-bill may be filed without leave it must be filed in time, and in a foreclosure case, after all the issues raised by the answer have been decided and a decree has been directed, defendant cannot file a cross-bill which sets up no matters not set up in the answer.

7. SAME—*separate decrees are not necessary although some of the lots have been sold.* A foreclosure decree may order the master to first sell certain lots conveyed by the maker of the trust deed to a third party still standing in such third party's name; second, those of the lots which the third party has conveyed; third, lots still owned by the maker of the trust deed; and fourth, a lot conveyed by such maker to another person; and it is not necessary to have a separate decree and sale as to each group of lands as such sales become necessary to pay the mortgage debt.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

WILLIAM B. MOAK, for appellant.

H. J. ROSENBERG, (MAX M. GROSSMAN, of counsel,) for appellee.

Per CURIAM: This is a bill filed in the superior court of Cook county May 22, 1906, to foreclose a trust deed in the nature of a mortgage, dated January 13, 1904, given by appellant to secure his principal note for $40,000, payable in three years after that date, with interest at six per cent per annum, payable semi-annually, until maturity, and with interest after maturity, until paid, at the highest rate of interest it was then lawful to be contracted for, said interest being evidenced by six interest notes of $1200 each, of even date, payable, respectively, at the end of each successive six months after date, with the same provisions as to the rate of interest after maturity as the principal note,—

all of which notes were payable to the order of the maker and by him endorsed in blank. The cause was referred to a master in chancery to take and report the proofs and his findings. Appellant filed a large number of exceptions to the master's report, which on a hearing the chancellor over-ruled, and entered a decree, in the usual form used in fore-closure proceedings, finding $41,407.91, including solicitors' fees, due complainant and directing a sale of the premises. On an appeal to the Appellate Court for the First District a judgment was entered affirming the decree. This appeal has been taken from that judgment of the Appellate Court.

It is necessary first to dispose of the suggestion of ap-pellee that under sections 119, 120 and 122 of the present Practice act this court cannot review controverted ques-tions of fact in chancery cases where the Appellate Court has by its judgment affirmed the findings of the trial court. Those sections, so far as they affect this question, are sub-stantially the same as the provisions of the former Practice act with one exception, which will be referred to hereafter. We have repeatedly held that under the former Practice act this court was not bound by the finding of facts by the Appellate Court in chancery cases. (*Joliet and Chicago Railroad Co.* v. *Healy,* 94 Ill. 416; *Moore* v. *Tierney,* 100 id. 207; *Miller* v. *Cook,* 135 id. 190; *Cheney* v. *Rood-house,* 135 id. 257; *City of Belleville* v. *Citizens' Horse Railway Co.* 152 id. 171; *Henry* v. *Caruthers,* 196 id. 136.) The one change in the present Practice act, passed since these decisions were announced, which bears on this ques-tion, is the addition of the italicized words to that part of section 120 of said act (Hurd's Stat. 1908, p. 1638,) which now reads: "If any final determination of any cause *or proceeding whatever except in chancery* shall be made by the Appellate Court, as the result wholly or in part of the finding of the facts, concerning the matter in controversy, * * * the judgment of the Appellate Court shall be final and conclusive as to all matters of fact in controversy," etc.

The words "except in chancery," so added, do not in any way weaken the authority of the decisions just quoted, but, on the contrary, would tend to re-enforce the rulings laid down therein. Under the present as under the former Practice act the finding of facts in chancery cases by the Appellate Court will not be conclusive here, but this court will determine the controverted questions of fact from the evidence in the record.

Appellant first contends that appellee (complainant below) was not the owner of the notes secured by said trust deed. The proof shows that the appellee is an old lady of about seventy-one years, and that her husband, Charles H. Nix, did most of her business for her. It is claimed by appellant that the trust deed and notes are really owned by Charles H. Nix. We are disposed to hold that the record shows that appellee was the legal holder of these notes and that the proceedings were properly brought in her name. But even if the husband were the real owner, as contended by appellant, this record does not show how appellant was in any way injured as to making any defense that could be made against the husband. Appellant claimed that he was not in default in any of the payments on any of the notes at the time the bill was filed in this cause. Counsel has not pointed out any evidence that was refused admission which tended to show in any way that he was not in default. He introduced considerable proof to show that he had made a settlement with the husband as to the interest notes that were unpaid at the time these proceedings were instituted in the superior court. The master found that the proof did not indicate that any such settlement had been made or that the appellant had made any showing that he had an offset for attorney's fees that could fairly be made against these notes, even if they were owned by the husband. This finding of the master was approved by the trial court and the judgment of the Appellate Court. The Appellate Court in its opinion states: "The proofs do

not show that Charles H. Nix was indebted to appellant in any sum whatever." We concur in that statement.

Appellant further contends that he made a deed conveying two or three lots covered by said trust deed to one William Eckhart, who was to pay $1000 therefor, and that he gave said deed to Charles H. Nix to deliver to said Eckhart on the payment of said sum, and that this $1000 was not credited on the indebtedness. As we understand appellant's claim, it is that this $1000 should have been credited before the bill was filed. The evidence fails to show that said deed was ever delivered to Eckhart or that the purchase money was ever paid to appellee or her husband. The decree, however, provided that "nothing in this decree contained shall in any way prejudice any right which Milton L. Thackaberry might have against Charles H. Nix, or anyone else, by reason of the execution by said Thackaberry of a deed in which William Eckhart is grantee," to said lots. It follows, therefore, that appellant is fully protected by the decree as to this $1000.

Certain lots included in the trust deed were condemned by the city of Chicago for school purposes, the value thereof being ascertained by jury trial, and the money was paid to the county treasurer and by him paid to the appellee and credited on the principal on said principal note. The trustee thereupon released said lots from the lien of said trust deed. Appellant contends that because, under the provisions of the trust deed, the trustee was not authorized to release the said lots on the payment of any less sum than $12,000, therefore appellee should be charged with $12,000 and the latter amount should be credited on the indebtedness, although the amount of the condemnation money, less taxes, was only $7688.79. With this we do not agree. The effect of the judgment was to transfer the lien of the trust deed from the land to the fund awarded. A formal release by the trustee was unnecessary. (*Calumet River Railway Co.* v. *Brown,* 136 Ill. 322; *Stopp* v. *Wilt,* 177 id.

620.) The further contention is apparently made by counsel for appellant that this condemnation money should have been credited on the interest and not all on the principal, and that if this had been done there would have been no default at the time the bill was filed. This contention is without force, as the bill was filed May 22, 1906, and the money was not paid over to appellee by the county treasurer until June 2, 1906.

Appellant further contends that the decree made an improper finding as to the amount of interest due on both the principal and interest notes. The trust deed gave the holder of the notes secured by the trust deed the right to declare all of the notes due on failure to pay the notes. Appellant made default in the payment of certain interest notes. Appellee declared all the notes due and filed her bill May 22, 1906. The condemnation money heretofore referred to was paid complainant June 2, 1906, and endorsed on the principal note as of May 26, 1906, leaving the balance then due on said note $32,311.21. Up to January 13, 1906, the interest was included in the coupon notes maturing on or before that date. From that date until May 22, 1906, when the bill was filed, the interest was computed on $40,-000 at six per cent and from then until May 26, 1906, at seven per cent. After May 26, 1906,—the date of the credit for the amount received from the condemnation proceedings,—interest was computed on the $32,311.21 balance at seven per cent until March 26, 1907, the date of the master's report. The principal of three of the four coupon notes due at the time of filing the bill (one having been paid) was included in the decree, and also interest at seven per cent from the time of the respective maturities thereof to the date of the master's report. Interest was also computed on the amount of unpaid taxes from the time of payment to March 26, 1907. The master found the total amount due March 26, 1907, not including solicitor's fees, to be $40,407.91. The decree entered August 9,

1907, finds that sum is due, with interest from March 26, 1907. We do not see how appellant can complain as to the computing of interest. If the decree, in effect, allowed interest on interest found to be due March 26, 1907, it also reduced the rate of interest from seven to six per cent from March 26, 1907, to the date of the decree, on the whole debt. If, therefore, there was any mistake in computing interest it resulted beneficially to appellant.

Appellant further complains that certain credits as to taxes were allowed appellee improperly. The record shows that the items complained of were not allowed by the master, as contended for by counsel.

April 24, 1906, appellant conveyed certain of this property to one James E. Wickham, subject to the trust deed here in question. It appears from the evidence that Charles H. Nix, the husband of appellee, knew of this sale. On May 18, 1906, Charles H. Nix, as attorney in fact for his wife, signed an agreement, wherein, after stating that said trust deed was about to be foreclosed and that said Wickham had purchased part of said lots, it was agreed that as soon as appellee had received a deed by said foreclosure proceedings she should transfer said property that Wickham had purchased from appellant, to said Wickham for $5000 in cash and take a trust deed for the balance due from Wickham on said property. This agreement was executed just four days before the bill in this proceeding was filed in the superior court. Counsel for appellant contends that this agreement shows a conspiracy on the part of Nix and Wickham to cheat and defraud appellant out of his property, and further contends that the arrangement practically released the original trust deed. We cannot agree with either of these contentions. The agreement was to have no effect unless appellee obtained title to the property, and this could not be done until there was a foreclosure. It is not pointed out in what manner appellant's rights were

in any way affected, injuriously or otherwise, by this instrument.

After the master's report had been considered and the chancellor had announced his decision and directed a decree in accordance with the master's report, but before the decree was prepared and finally entered, the appellant filed a cross-bill on June 14, 1907. On August 9, 1907, appellant moved for a rule on appellee to answer said cross-bill, and a counter-motion was made by appellee to strike said cross-bill from the files, which latter motion was allowed. All the material matters set up in the cross-bill had been theretofore set up in the answer and amended answers of appellant and had been passed upon by the court in ordering the decree. While the filing of a cross-bill is a matter of right and requires no leave of court, yet it should be filed in proper time. After all the issues raised by a cross-bill have been settled by the court and a decree ordered, a defendant in chancery has no right to file a cross-bill and thus again have a rehearing on such questions. The rules governing the practice in this matter, as laid down in *Fread* v. *Fread,* 165 Ill. 228, and *Ruprecht* v. *Muhlke,* 225 id. 188, must control. On the facts in this record the chancellor rightly struck the cross-bill from the files.

At the time the decree was entered, one lot covered by the trust deed stood in the name of one Foley, to whom it had been conveyed by appellant. Certain other lots were in the name of Foley, having been conveyed to him by Wickham, and certain other lots and blocks were in the name of Wickham, and other lots covered by the trust deed were in the name of appellant. The decree provides that the master shall sell, first, certain specified lots and blocks so conveyed to Wickham which had not been re-conveyed by him, and if the sum thus realized be not sufficient to pay the debts, then, second, certain other specified lots included in said conveyance from the appellant to Wickham and by Wickham conveyed to Foley; third, the lots which had not

been conveyed by appellant; fourth, one lot which appellant had conveyed to Foley. Appellant contends that the decree in this respect is wrong. As we understand his contention, he insists that there should have been a separate decree and sale for the lots still in the name of Wickham, then a separate decree and sale of the second group held by Foley, and then, if necessary, a third decree and sale for lots still held by appellant. The authorities cited by counsel for appellant (*Boone* v. *Clark,* 129 Ill. 466; *Koch* v. *Roth,* 150 id. 212;) do not bear out this contention. The decree in this respect is correct.

The trust deed provided that appellee should be allowed, in case of foreclosure, reasonable solicitor's fees, and the court allowed $1000. It is contended by appellant that this fee is unreasonable. We are inclined to think, on the testimony in this record, that while this fee is liberal in amount it is not unreasonable or out of the ordinary.

It is also contended by appellant that the fees of the master are excessive. The master's report properly itemized his fees under the rule laid down in *Wirzbicky* v. *Dranicki,* 235 Ill. 106, and cases there cited. We think, under those decisions, that a fee of $422.75 was not excessive.

All counsel in their briefs have criticised the opposing counsel for certain of their respective acts. Appellant, an attorney at law, conducted his own case before the master and testified before the master. Both of the counsel for appellee appeared before the master and both of them testified and have remained in the case through all the courts. We have been compelled too frequently of late to comment on counsel testifying in cases which they themselves are conducting. (*Wilkinson* v. *People,* 226 Ill. 135; *Bishop* v. *Hilliard,* 227 id. 382; *Onstott* v. *Edel,* 232 id. 201; *McConnell* v. *Brown,* 232 id. 336; *Glanz* v. *Ziabek,* 233 id. 22.) Our views as to the proper rules governing such matters are set out in those decisions. Not only was it improper practice for counsel to remain in and conduct

the case after testifying, but one of the counsel for appellee deserves criticism for the flippant manner in which he answered questions before the master, such as, "You bet I do;" "You bet I did." If our decision in this case depended upon the testimony of any of the counsel we should feel it necessary to comment at greater length on this question.

We find no reversible error in the record. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*