FRANK P. Fox, Plaintiff in Error, *vs.* PHILIP F. SIMONS *et al.* Defendants in Error.

*Opinion filed October 25, 1911.*

1. APPEALS AND ERRORS—*the Supreme Court may review facts in chancery cases coming through Appellate Court.* The amendment of sections 121 and 122 of the Practice act in 1909, concerning writs of *certiorari* to the Appellate Court, did not repeal, by implication, the provision of section 120 of said act which excepts chancery cases from those in which the judgment of the Appellate Court is final as to the facts, and the Supreme Court may now, as before, determine the controverted questions of fact from the evidence in chancery cases coming through the Appellate Court.

2. PRINCIPAL AND AGENT—*agent cannot acquire interest in principal's business without latter's consent.* An agent cannot, directly or indirectly, acquire an interest in his principal's business without the principal's consent, freely given and with full knowledge of every matter known to the agent which might in any way affect the principal's interests; and it is of no consequence that no fraud was intended or that no advantage was derived by the agent.

3. SAME—*the burden is on agent to prove principal's consent to agent's dealing for himself.* An agent hired to give his full time to the purchase of property for the principal may, with the principal's consent, buy property of the same class for himself at the same time he is buying for the principal; but the burden is upon

the agent to show affirmatively that the principal gave his consent after full knowledge of all the material facts, and that the agent acted in good faith and gave full information to the principal.

4. LIS PENDENS—*purchaser pendente lite takes subject to rights of the parties.* Persons purchasing oil leases from the lessee while a suit to compel the lessee to assign the same to his principal is pending, take subject to the rights of the parties to the suit as the same are finally determined.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Marion county; the Hon. A. M. ROSE, Judge, presiding.

ARTHUR T. COBB, CHARLES H. HOLT, and KAGY & VANDERVORT, for plaintiff in error.

NOLEMAN & SMITH, and. W. F. BUNDY, (LEROY M. WADE, of counsel,) for defendants in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

March 31, 1909, plaintiff in error filed his bill in chancery in the circuit court of Marion county to compel the assignment of certain oil and gas leases and for an accounting. After a hearing the court dismissed the bill for, want of equity. The Appellate Court affirmed that decree, and on a petition for *certiorari* the case is brought here for review.

Plaintiff in error was engaged in what he termed the oil producing business, and had been operating in this and other States for several years. In November, 1907, he employed defendant in error Simons to assist him, and that employment continued until the early part of 1909. In 1908, from indications observed in a coal mine in Marion county, Illinois, prospectors thought that oil might be found in that locality. Plaintiff in error requested Simons and

two of his other employees, McCamey and Gorman, to meet him at Sandoval, in that county. He then directed Gorman to get leases north of the Baltimore and Ohio Southwestern railway, which runs across the county at that point, and Simons (assisted by McCamey, who was new in the business,) to get leases south of the railway. Simons was receiving $150 a month from Fox and all his expenses, the same as he had received during all of his employment. There was no direction to secure leases on any particular tracts, but Fox testified that he told his employees to lease about 3000 acres of land. The three agents made their headquarters at Sandoval, hired livery rigs, and interviewed the owners for the purpose of securing the oil leases. Simons and McCamey secured leases for about 875 acres for Fox south of the railroad track, and Gorman secured about 1400 acres in Fox's name north of the track. The testimony tends to show that Simons assisted Gorman in getting some of these latter leases. Simons also took some thirteen leases in his own name during this month, September, 1908, the twelve leases now in question, and one which lapsed, aggregating about 452 acres. Each of these leases provided, in substance, that the lessor granted to the lessee all of the oil, water and gas under the land described, for a stated number of years, and for as much longer as oil and gas should be found in paying quantities. The consideration was one dollar paid down, the agreement being that the lease should be null and void if a well was not completed within six months, unless the lessee should pay the lessor one dollar per acre as rent until the well was completed. The lessor was also to have a fractional part of the oil and the right to use gas for household purposes. After some 2300 acres had been secured by the three agents in Marion county for Fox, they reported to him, and he said he did not care to secure any more. McCamey's employment by Fox ceased at that time and he said he was going back to get some leases for himself, and Fox replied

to go ahead,—that he had no objections. Simons testified that at Sandoval, two or three days after they started work in Marion county, he told Fox that the oil prospects looked good to him and he was going to take some leases for himself, and that the plaintiff in error replied, "I don't care." Plaintiff in error denies this conversation, and no one else heard it. McCamey testified to a conversation that he had with Fox some time in October with reference to Simons and himself taking some oil leases, and that he told Fox they had taken 500 acres in their names, and when Fox expressed a doubt that they had that much, he replied, "We got fifty any way." There is also testimony by Mrs. Simons as to a conversation at her home with Fox, in which he made a statement indicating that he knew Simons and McCamey had oil leases in Marion county.

Plaintiff in error claims that the leases in question belong to him because they were procured by Simons and McCamey while acting as his agents on a salary and when he was paying their hotel and livery bills and other expenses. Defendants in error contend that Fox gave Simons permission to take these leases and knew Simons and Mc-Camey had certain leases, but considered them of small value and made no objection to their holding them, until oil was struck in that vicinity.

Defendants in error first contend that under section 122° of the Practice act this court can examine this record as to questions of law, only, and cannot consider any questions of fact. Previous to the enactment of the Practice act of 1907 this court reviewed and passed upon controverted questions of fact in chancery cases. After the passage of that act we held that the findings of fact thereunder in chancery cases by the Appellate Court were not conclusive on this court. (*Nix* v. *Thackaberry,* 240 Ill. 352.) Subsequent to this decision sections 121 and 122 of the Practice act were amended, the law going into effect July 1, 1909. (Laws of 1909, p. 304.) Section 122 of the Prac-

tice act of 1907 provided: "The Supreme Court shall re-examine cases brought to it by appeal or writ of error, from the Appellate Courts, as to questions of law only, except as otherwise provided in this act; and, in the cases aforesaid, no assignment of error shall be allowed calling in question the determination of the inferior or Appellate Courts upon controverted questions of fact therein." By the amendment of July 1, 1909, the words of said section 122, "except as otherwise provided in this act," were omitted from said section and the words "writ of error" changed to "writ of *certiorari.*" The argument now is, that by leaving out the quoted words from the above section the legislature intended that this court should be deprived of the right to review questions of fact in chancery cases.

Section 120 of the Practice act reads: "If any final determination of any cause or proceeding whatever except in chancery shall be made by the Appellate Court," etc. The said amendment of July 1, 1909, does not in any way refer to said section 120, although the act expressly repealed section 119. Section 120 stands as it did before said amendatory act was passed. If the argument of counsel on this question is sound, then the words "except in chancery," in said section 120, must necessarily be held to be repealed by implication. Such repeals are not favored in law, and when a law does not expressly repeal an older one on the same subject, and the two are not so repugnant that they cannot stand together, both will remain in force. There is no such repugnancy in these two provisions. (*Galpin* v. *City of Chicago,* 249 Ill. 554.) The purpose of the said amendment of said sections 121 and 122, of July 1, 1909, was to regulate appeals from the Appellate Court to the Supreme Court, either on a certificate of importance from the Appellate Court or by petition for *certiorari* in this court. We think it is evident from the reading of these sections as amended, in connection with the sections as they read before, that that was practically the sole and only pur-

pose of the amendment. The legislature did not intend to change the method of procedure as to the consideration of cases in the Supreme Court after they have been brought there by either method from the Appellate Court. Had it so intended it would also have amended section 120 by striking out the words "except in chancery." This conclusion is strengthened by the construction given thereto by court and counsel since said amendment was enacted. In every chancery case brought to this court, either by certificate of importance or on petition for *certiorari,* counsel and the court have assumed, without question, that this court was authorized to review the facts. (See *Stein* v. *Kaun,* 244 Ill. 32; *Chicago Auditorium Ass'n* v. *Fine Arts Building,* 244 id. 532; *State Bank of Clinton* v. *Barnett,* 250 id. 312; *Zeigler* v. *Illinois Trust and Savings Bank,* 245 id. 180.) This court, under the present Practice act, is required to determine controverted questions of fact in chancery cases from the evidence in the record, the same as formerly.

The evidence is not controverted that defendants in error, Simons and McCamey, at the time they obtained these leases, were salaried employees of plaintiff in error, with all their expenses paid. It is a familiar doctrine, frequently recognized by this court, that an agent cannot, either directly or indirectly, have an interest in the business of the principal, within the scope of his agency, without the consent of his principal, freely given, after full knowledge by the principal of every matter known to the agent which might in any way affect the interests of the principal, and it is of no consequence in such case that no fraud was intended, or that no advantage was, in fact, derived by the agent. (1 Perry on Trusts,—6th ed.—sec. 206; *Tyler* v. *Sanborn,* 128 Ill. 136; 1 Pomeroy's Eq. Jur. sec. 155; *Prince* v. *Dupuy,* 163 Ill. 417.) An agent hired to give his full time to the purchase of property for his principal may, undoubtedly, with the consent of his principal, buy prop-

251—21

erty of the same class for himself at the same time that he is purchasing for the principal, but in such case the burden of proof is upon him to show such consent and that the principal had knowledge of every material fact known to the agent which might affect the transaction. Such transactions are voidable on the grounds of public policy. They will be closely scrutinized by a court of equity, and the burden is on the agent to show affirmatively that he acted in perfect good faith and gave his principal full information with reference to the transaction in question. *Roby* v. *Colehour,* 135 Ill. 300; *Beach* v. *Wilton,* 244 id. 413.

These are conceded by counsel for defendants in error to be the rules of law governing such transactions, but it is insisted that the facts here show that these leases were purchased by Simons in the utmost good faith, with full knowledge on the part of Fox. We are compelled from this record to hold otherwise. The conversations with the plaintiff in error testified to by McCamey and Mrs. Simons with reference to the leasehold interests of the two agents are entirely consistent with Fox's statement that he understood the leases referred to had been obtained after McCamey ceased working for him, and after the date when he admits that he told both of them that they could purchase leases for themselves if they desired to do so. No claim is made by defendants in error that they told plaintiff in error as to the number of pieces, or when they were purchased, or where they were located. The only positive testimony affecting this question is that of Simons as to one brief conversation with Fox at Sandoval, in the early part of September, when he claims the latter said it was all right for him to purchase a little for himself, which conversation Fox denies. Simons' testimony that he obtained most of the leases running to himself late in the evening does not alter the legal rules controlling the question. Plaintiff in error was entitled, under the contract, to all of Simons' time and all of his services. It is apparent

from this record that in purchasing oil leases such as are here in question, the purchaser must seek the owners of the land as he can meet them,—morning, noon or night. It is true that the actual money paid for the leases to the owners of the land was paid by Simons and McCamey; but these amounts were small,—much smaller than the expenses and salaries of the two agents, all paid by plaintiff in error, during the time they took, while in his employment, to obtain the leases in question. The relations between defendants in error, Simons and McCamey, and the plaintiff in error, were of such a nature that they were compelled to act towards him with the utmost fairness. The weight of the evidence does not clearly show that in purchasing these leases they did so with Fox's consent, and with the full knowledge on his part of every matter known to them which might affect his interests.

Simons assigned a part of his interest in these leases to McCamey, and both of them, while this suit was pending, sold to various persons who are parties to this litigation, certain interests in said leases. A purchaser *pendente lite* takes subject to the rights of the parties to the suit. *Norris* v. *Ile,* 152 Ill. 190.

The decree should have directed that these leases be assigned to plaintiff in error on the payment by him to the defendants in error of the amounts paid out by them, respectively, to the lessors in accordance with the terms and conditions of said leases.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court for further proceedings in harmony with the views herein expressed.          *Reversed and remanded.*