(No. 26785.—

CRAWFORD REALTY AND DEVELOPMENT CORPORATION, Appellee, *vs.* WOODLAWN TRUST AND SAVINGS BANK *et al.* —(EMIL ANDERSON *et al.*, Appellants.)

*Opinion filed January 21, 1943—Rehearing denied March 10, 1943.*

ORR, VAIL, LEWIS & ORR, and TAGE JORANSON, (WARREN H. ORR, of counsel,) for appellants.

CUMMINGS & WYMAN, (AUSTIN L. WYMAN, of counsel,) for appellee.

Mr. JUSTICE FULTON delivered the opinion of the court:

This was action filed by the appellee, Crawford Realty and Development Corporation, to quiet title to various tracts of vacant real estate described in the complaint. Service by publication was had upon certain defendants against whom default was taken and a decree quieting title for said appellee entered on June 2, 1936. Certain of the appellants filed petitions praying that the decree be set aside, amended or altered, on the ground that service of process by publication upon them was not proper.

The appellee answered the petitions, the cause was referred to a master and, upon the recommendations of the master, the superior court of Cook county decreed that the decree entered by default stand against the petitioners. The Appellate Court affirmed the decision of the superior court of Cook county. From that judgment, appeal was allowed to this court.

The appellee's predecessor in title was the Kaspar American State Bank, as trustee, which held title to the premises involved under a declaration of trust for the use and benefit of Charles C. Cross, Joseph A. Hinkamp, Edgar R. Redlich

and J. Hinkamp, beneficiaries. There were five separate tracts of land involved. Cross, Redlich and Joseph A. Hinkamp incorporated Hinkamp & Company, who were agents to subdivide and sell the tracts of land. The Kaspar bank sold the premises to other banks, as trustee, in the following manner:

The vendee bank signed a trust agreement whereby it certified that it was about to purchase one of said tracts of land from the Kaspar bank, as trustee, and that it would hold same when acquired for the benefit of syndicate subscribers. The agreement also certified as to the syndicate's unitization. One of the tracts was sold under such an arrangement to the Woodlawn Trust and Savings Bank, as trustee, the appellants herein being purchasers of beneficial certificates. The articles of agreement entered into between the Kaspar bank, as trustee, and the Woodlawn bank, as trustee and purchaser, provided that if the purchaser made the payments called for by the agreement, the Kaspar bank agreed to convey to the purchaser the premises therein described, the purchaser agreeing to pay therefor the sum of $99,750, one third upon the execution of the contract and the balance in quarterly installments, with interest after maturity at seven per cent per annum when and as the money was received by it from the beneficiaries under the Woodlawn bank, and not unless so received. The agreement further provided that in case of the failure of the purchaser to make any of the payments or to pay general taxes or special assessments, the contract should, at the option of the vendor, be forfeited and determined and all payments made thereunder forfeited and retained by the vendor in full satisfaction as liquidated damages.

Under the Woodlawn bank trust agreement with its beneficiaries, which was similar to the other contracts of sale and purchase entered into with Kaspar bank, it was provided that the Woodlawn bank was to acquire and hold

the real estate described therein, when acquired, for the use and benefit of the certificate unit holders according to their respective interests, each unit being represented by a certificate of beneficial interest in the amount of $500 and each share of beneficial interest being a 2/200th interest in the premises when paid in full, and that the interest of any beneficiary shall consist solely of the power of direction to deal with the title through a committee and to receive the proceeds from rentals and sale of the premises, and that such right in the avails shall be deemed to be personal property.

It was further provided in the trust agreement that no beneficiary had, by virtue thereof, or was to have any right, title or interest in the real estate, but only in the proceeds, it being the intention to vest full legal and equitable title in the trustee. Each certificate of beneficial interest issued to a purchaser upon its face provided that the interest evidenced thereby was subject to forfeiture or disposition in accordance with the terms of the trust agreement.

During the depression the certificate holders defaulted in the payments they had agreed to make and the vendee banks who had purchased or contracted to purchase the lands from the Kaspar bank also defaulted in the payment of their obligations under their contracts. Certain dissatisfied holders recorded their certificates of beneficial interest. Notices of forfeiture and cancellation were served upon the respective vendees and suit was subsequently instituted by the appellee to remove the apparent interest of the recorded beneficial certificates as clouds upon the title. All holders of beneficial certificates who had recorded their certificates were made parties defendant to the suit. Summons was taken out in the proceeding for every beneficiary who filed a claim of record. Most of these defendants were served personally and the balance by publication. There were in all 644 purchasers of certificates of interest. The greater percentage of these were not named and were designated

as "unknown owners." Default was taken against the defendants and a decree quieting title entered.

Within a year after the entry of the decree, the appellants filed their petition in the trial court, charging that they were certificate holders and that they were made defendants to the complaint of the plaintiff as "unknown owners," although their names were known to the appellee; that no notice was received by them of the pendency of the action, that they were beneficial owners and that the defects in process were such that jurisdiction of the court over the appellants was not acquired. They also charged that there was fraud and false representations in the sale of the units and that forfeiture should not be permitted, because it would be inequitable to treat the amounts paid as liquidated damages.

The cause was referred to a master who found that there was no fraud in the process against unknown owners and that the syndicates were not fraudulent and that the subscribers were not induced to subscribe by fraudulent misrepresentations. Objections were made by the appellants, on the hearing before the master, that they were not obliged to show that upon the merits of the case the appellee was not entitled to have a decree against them; but that the master had misconceived the application of section 50(8) of the Civil Practice Act requiring the petitioners to go forward with evidence, thus placing the burden of proof upon them.

The record shows that the master suggested that he would be agreeable to having the scope of the reference to him passed upon by the court before proceeding on the merits. The record further shows that the scope of the reference was presented to the superior court, and when such court indicated that he would sustain the views of the master, counsel for appellants withdrew his objection, stating that he was withdrawing it "so as not to encumber the record." Thereafter, counsel for appellants offered his proof on the merits.

It is the appellants' theory: (1) that the decree entered against known defendants as unknown was void as to them and could be set aside at any time, and that section 50(8) of the Civil Practice Act does not apply because there were in fact no unknown owners; (2) that the contracts for the sale of the land should not be declared forfeited in equity because the payments made thereon exceeded damages and that the contracts were so harsh and unconscionable that a court of equity should not lend its aid to the plaintiffs.

The contention by the appellants that section 50(8) of the Civil Practice Act does not apply in this case and that jurisdiction was not acquired over them as a basis for the final decree by publication as unknown owners when their names were known, and that as a result the decree is null and void as to them, is a shift of theory from that propounded in the trial and Appellate courts. It is quite apparent from the record that both in the trial court and in the Appellate Court, the appellants contended the hearing provided for by section 50(8) is not a final hearing on the merits, but only a preliminary hearing on the appellants' right to answer the complaint, and that the master in chancery had misconceived the application of the section in requiring the appellants to go forward with the evidence, thus placing the burden of proof upon them. Without deciding whether the apparent shift in theory violates the well known rule that a party may not shift his position or theory on appeal, the record shows that the question of jurisdiction of the court over the persons of the appellants was raised before the master. The master ruled that under the pleadings the hearing was on the merits after hearing appellants' argument that the scope of the hearing was limited to whether or not the appellants had been served with summons or with notice of the pendency of the cause of action. The master further advised that the question be presented to the court before hearing any evidence on the merits. The appellants presented their petition and argument to the court, who indicated he would sustain the rul-

ing of the master. Thereupon, appellants withdrew, voluntarily, their petition and proceeded with the hearing on the merits. Voluminous oral and documentary proofs were introduced and the record shows that appellants' own evidence consumed more than 400 pages in the record.

By withdrawing the petition and proceeding to the merits of the controversy, the appellants submitted themselves completely to the jurisdiction of the court. Nor does the statement by counsel for appellants, that by going ahead he was not waiving the rights of the appellants to object to the scope of the reference in the reviewing courts, alter the situation. *Ladies of the Maccabees* v. *Harrington,* 227 Ill. 511; *Kelly* v. *Brown,* 310 id. 319.

A serious question exists as to whether the appellants were necessary parties to the suit to quiet title. It is admitted that there was no privity of contract between the certificate holders and the Kaspar bank, as trustee and vendor. All of their dealings were with Hinkamp & Company.

In 1929 a settlement agreement was entered into between the Kaspar bank and syndicates 5, 6, 8 and 9, wherein it was recited that the vendors have the right to enforce payment against the vendee syndicate trustees, only to the extent of money collected, but have no right to enforce payments against the syndicate members or to enforce payment on their certificates. It was acknowledged that the Kaspar bank had a right to forfeit in accordance with the terms of the agreement.

Under the trust agreements entered into by the syndicate trustees, title was to vest in the trustee and not in the certificate holders. The individual beneficiaries having no interest in the particular premises involved until their certificates were paid in full and their only interest being in a power of direction and in the proceeds from rentals and sales, their interests were only personal property and not such as to make them indispensable or necessary parties to the suit to quiet title to the real estate.

Appellants further contend that payments made by the certificate holders exceed any damages and that the contracts are so harsh and unconscionable that a court of equity should not lend its aid to the appellee, but should leave the appellee where it has put itself, and also contend that since the contracts were fictitious and the defeasible units were represented as indefeasible, they should be rescinded, not forfeited.

The trust agreements were entered into beginning with November, 1926. It is undenied that during the latter part of 1928 the syndicates were already in default. Tage Joranson signed an agreement with the Kaspar bank in April, 1929, as the attorney and agent of the syndicates, which agreement stated the various purchase prices of the lots, provided for concessions of reduction up to ten per cent of the contract purchase price, recognized the right of forfeiture, and provided for strict time limits for forfeitures. This agreement was discussed and considered at a meeting of syndicate members which, according to one witness, approximated 500 to 600 people.

Joranson also sent a letter addressed to the Hinkamp-syndicate subscribers, relative to the settlement, in which it was stated that the settlement improved the financial condition of the syndicates and facilitated their ultimate success, and which also recognized the desirability of the location of the properties.

Certainly the certificate purchasers knew in 1929, at the time of the execution of the compromise agreement, whether any fraud or unconscionable practices had been committed upon them. Yet, not until shortly before the expiration of one year after the entry of the decree quieting title in 1936, did any of the 644 certificate holders come forward with their charges of fraud. It is well settled that in order to rescind for fraud, one cannot speculate upon a possible profit, but must act promptly to enforce his rights upon learning or discovering a fraud. (*Day* v. *Fort Scott Investment Co.* 153 Ill. 293; *Green-*

*wood* v. *Fenn,* 136 id. 146; *Kanter* v. *Ksander,* 344 id. 408.) As a matter of fact, in January, 1931, Joranson, in behalf of the certificate holders, stated that on account of the depression it was impossible to get the subscribers to continue their payments, that they did not have the money. Still no complaint was made that the subscribers were defrauded or did not receive what they had bargained for. The certificates of beneficial interest in the syndicates, on their face, showed the interests to be defeasible. The agreement of 1929 recognized this fact. The appellants, by their continued defaults and inaction over a period of years, have placed themselves in a position where they cannot make any tender or offer of compromise. Conditions which existed during the boom days preceding the crash of 1929 today are beyond all reason.

We are of the opinion that the appellants who were served by publication in this case had a right to contend, if they wished, that the service was improper and to stand on that point, but when they withdrew their petition raising the point, and proceeded to an extensive hearing on the merits of the cause, they clearly waived the jurisdictional question. (*Kelly* v. *Brown, supra.*) We further believe that even if there were any fraud or inequity in the original transactions, the appellants, by their many years of remaining in default and because of inaction and failure to complain during such a long period of time, have lost the right to assert that defense in this suit. *Greenwood* v. *Fenn, supra*; *Kanter* v. *Ksander, supra.*

For the reasons indicated, the judgment of the Appellate Court affirming the decree of the superior court, is affirmed.                    *Judgment affirmed.*