(No. 32234.—

Mildred F. Halla, Appellant, *vs.* Chicago Title & Trust Company, Trustee, *et al.*—(Paul Schofield, Appellee.)

*Opinion filed March 20, 1952.*

Clarence F. Martin, of Chicago, for appellant.

Heth, Lister & Flynn, of Chicago, for appellee.

Mr. Justice Hershey delivered the opinion of the court:

Appellant, Mildred F. Halla, filed her complaint in the superior court of Cook County on February 19, 1948, against the Chicago Title & Trust Company, as trustee, and Paul Schofield, seeking to rescind a certain contract to purchase real estate therein described, for the return of $16,000 paid on the purchase price and a note for $12,000, and the cancellation of a trust deed securing said note for the balance of the purchase price, and for other relief. The chancellor found that the material allegations of the complaint had been proved and entered a decree in

favor of appellant. On appeal the Appellate Court reversed the judgment of the superior court and remanded the cause, with directions to dismiss the complaint for want of equity. Leave to appeal has been granted to permit a review by this court.

The real estate in controversy involves a three-story family residence situated in the city of Chicago, title to which was held by the Chicago Title & Trust Company, as trustee, under a land trust, by the terms of which Paul Schofield was named sole beneficiary. Under the terms of the trust instrument, Paul Schofield, as beneficiary, had control of the use, occupancy, management and sale of the property, without direction from the trustee. The residence on the premises was originally constructed for occupancy by one family. In the latter part of 1946, Schofield undertook to remodel the dwelling house and convert it into five housing units. On May 14, 1947, after the remodeling had been completed, the premises were advertised for sale. Appellant responded to the advertisement and, after viewing the premises, began a series of negotiations for the purchase of the premises which culminated August 13, 1947, in a contract whereby she undertook to purchase the property for $28,000 of which sum $16,000 was to be paid in cash, on delivery of the deed, and the balance to be secured by a purchase-money mortgage. The deal was closed on August 28, 1947. On December 9, 1947, after a hearing pursuant to governmental rent control regulations, it was found that the premises in question were subject to rent control, and the gross monthly rental from the four rented housing units was reduced from $465 per month and brought under a rent ceiling of $235 per month. On January 12, 1948, appellant demanded rescission of the contract of sale and, upon being refused, began this suit.

The issue raised by the pleadings was whether appellant had been induced to purchase the property as the

result of false representations knowingly made by Schofield, to the effect that the premises were leased and occupied for commercial purposes, and that the conversion of the single residential unit on the premises to a multiple-unit building, thereby creating additional housing accomodations, was completed on and after February 1, 1947, so as to exempt the property from rent controls imposed by the Federal government. The chancellor found that Schofield did knowingly make false representations of material facts upon which appellant relied as an inducement to purchase the premises. It was decreed that the contract of sale be canceled, the note and mortgage be delivered up for cancellation, and an accounting had to determine what amount of the purchase price paid should be returned to appellant. This decree was reversed by the Appellate Court.

Appellant filed her complaint in chancery thereby invoking the equitable jurisdiction of the court. The relief prayed for in the complaint could not have been granted without applying the principles of equity and exercising the powers of a court of equity. The issues of fact raised by the pleadings were resolved in favor of appellant, by the chancellor who tried the case on its merits. The Appellate Court reached a different conclusion and reversed the judgment of the trial court. In reviewing the judgment of the Appellate Court it must be remembered that it is the judgment of that court, rather than the reasons assigned in its opinion, which is subject to review by this court. (*Kamienski* v. *Bluebird Air Service, Inc.,* 389 Ill. 462.) The rule under our former Practice Act that findings of fact as to equitable issues, made by the Appellate Court, are not conclusive on this court, has not been changed by the Civil Practice Act. (Ill. Rev. Stat. 1949, chap. 110, pars. 213, 216; *Schultz* v. *Chicago City Bank and Trust Co.* 384 Ill. 148; *Fox* v. *Simons,* 251 Ill. 316.) Controverted questions of fact presented for review must,

therefore, be determined from the evidence in the record. (*Nix* v. *Thackaberry,* 240 Ill. 352.) This case was tried before the chancellor, who had an opportunity to see and hear the witnesses. In examining the evidence in such a case we are bound by the rule that to justify a reversal of the decree entered by the chancellor it is necessary that it appear that the decree is contrary to the manifest weight of the evidence. (*Swinford* v. *Roper,* 389 Ill. 340; *Brubaker* v. *Hatjimanolis,* 404 Ill. 342.) It is with the above rules in mind that we proceed to a consideration of the evidence shown by the record.

The whole controversy in this case arises out of the fact that the property in question was brought under rent control regulations of the Federal government approximately four months after appellant had entered into a contract to purchase the property in question from appellee, Paul Schofield. As a result of the imposition of the controls, the monthly rentals of the property were reduced from $465 to $235 per month. One of the charges of the complaint was that appellee, Paul Schofield, and his agent, Frank Schofield, knowingly and falsely represented that the apartments in the building were occupied by tenants who used them for commercial purposes and, therefore, not subject to rent control. Leases on the premises contained appropriate recitals that the demised premises were to be put to a commercial use. It is clear from the evidence that the apartments were not in fact being occupied for commercial purposes, but to the contrary, were ordinary housekeeping apartments in which the respective tenants were dwelling. Appellant inspected the property a number of times prior to the execution of the contract and obviously could not have been deceived into believing that the various apartments were commercial establishments rather than residential units in which the respective tenants made their abode. The evidence does not sustain appellant's claim that she was induced to sign the contract

of sale because of representations concerning the use of the premises for commercial purposes.

The second issue of fact presented by the pleadings was whether or not appellant had been induced to enter into the contract to purchase the property by means of false representations knowingly made by appellee, Paul Schofield, and his agent, Frank Schofield, that the property was not subject to rent control regulations of the Federal government because the single-family dwelling on the premises had been substantially changed, remodeled, and converted into a multiple-housing unit on and after February 1, 1947. The contract to purchase the property was executed in the office of Frank Schofield on August 13, 1947. Prior to the signing of the contract there is evidence fairly tending to show that representations were made to appellant, either directly or through her attorney, that the premises were not completed for occupancy prior to February 1, 1947, and were not occupied by tenants prior to that date. This was false, because two of the apartments had been occupied by tenants in January, although their written leases did not begin until February 1, 1947. This was material on the question of whether the property had been converted into a multiple-housing unit on and after February 1, 1947, and thus freed of rent control. Property which was converted into multiple units prior to that date was still subject to regulation. Appellant was told that the tenants had moved into the premises after February 1, 1947, before the remodeling of the building was completed in March or the first of April, because they were so interested in getting possession that they were willing to put up with the inconvenience of workmen in their apartments. A direct question as to whether Federal authorities had ever questioned the rents being charged for the various apartments was answered in the negative, and assurances given that a new law passed by Congress freed properties converted into additional housing accommodations after February 1,

1947, from further rent regulation. In order to provide more time for investigation of the question of rent control over the premises, a provision was written into the contract giving appellant the right to determine the applicability of rent control regulations to the property at any time before the deal was closed. It was further provided that if for any reason the premises were found to be subject to control, upon proof of that fact to the satisfaction of the seller, Paul Schofield, the contract was to become void and the earnest money returned. The attorney for appellant checked the regulations applying to the decontrol of housing units, verified the filing of the proper forms to accomplish decontrol of the premises, made numerous attempts to contact the chief area rent attorney and finally went to his office. There he was informed by the secretary in charge that there was nothing in the files concerning rents on the property in question. In the meantime appellee was pressing for a consummation of the sale. He furnished appellant with a copy of an affidavit filed with the Federal housing authorities, which stated that the premises had been converted into five studio or residential units which were occupied on and after February 1, 1947, and subject to decontrol under rent control regulations. A certificate of the contractor was provided showing the completion of the alterations on April 1, 1947. Appellee executed an affidavit for the purpose of inducing appellant to complete the purchase, which stated that substantial alterations of the premises creating additional housing accommodations were completed on and after February 1, 1947. There is evidence that at the time the sale was consummated on August 28, 1947, appellee was advised that appellant's attorney had not been able to contact the housing authorities. Appellant was then assured that the attorney for the housing expediter had been contacted by appellee's attorney; that no hearing was to be held on the question of decontrol; that the mere filing of the decontrol reports

was sufficient; that there had never been any objection to the leases; never had been any discussion at the housing expediter's office; and that he had received no notices or any indication that any further steps had to be taken relative to rent control over the property. Evidence to the contrary shows that appellee Paul Schofield received four notices dated August 12, 1947, from the office of the housing expediter, proposing to reduce the rents on the four rented apartments because they were being used for dwelling purposes and were, therefore, subject to rent control. In response to these notices appellee directed a letter to the office of rent control, on August 14, 1947, calling attention to prior communications in which it was claimed that the property had been converted into units after February 1, 1947, and had not been occupied prior to that date. Also, a notice of an informal hearing set for August 25, 1947, with respect to the accommodations provided by the property, was received by appellee. Frank Schofield appeared at the place set for the hearing and, after a conference with the chief area rent attorney, the hearing was postponed. This was only three days before the sale was closed.

It is contended on behalf of appellee that appellant was afforded ample opportunity to ascertain all of the facts pertaining to the time the tenants went into possession, the date of the completion of the remodeling and whether the premises were subject to rent control; that the law charges her with all knowledge she might have obtained by making use of means afforded her of acquiring that knowledge. The general rule is that a party guilty of fraudulent representations will not be permitted to charge negligence of the other party. Where one makes a positive statement to another, upon which the other acts in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent and from it the party guilty of fraud can take no benefit. In such cases the ques-

tion necessarily arises whether, under all the circumstances, the party seeking relief had the right to rely upon the representations made. In determining this question the representations must be viewed in the light of all the facts of which the party injured had actual knowledge and also such as he might avail himself of by the exercise of ordinary prudence. (*Morel* v. *Masalski,* 333 Ill. 41.) We have already recounted the evidence concerning the representations alleged to have been made. In addition appellant testified that appellee insisted that she not talk to the tenants of the building for fear they might become disturbed. Whether or not appellant used ordinary prudence and due diligence was a question of fact, which was before the chancellor for his consideration at the trial. (*McRoberts* v. *Combination Fountain Co.* 317 Ill. 165; *Kehl* v. *Abram,* 210 Ill. 218.) The evidence as to whether or not such representations were made is contradictory. The chancellor saw and heard the witnesses and was in a position to determine their credibility. After considering all the evidence in the record, we have concluded that his finding that appellee knowingly made false representations of material facts, by means of which appellant was induced to enter into and complete the contract to purchase the premises, is not contrary to the manifest weight of the evidence.

Appellee invokes the familiar rule that a contract induced by fraud is not void but only voidable at the election of the party claiming to have been defrauded. Reliance is also placed on the rule adhered to in *Crawford Realty and Development Corp.* v. *Woodlawn Trust and Savings Bank,* 382 Ill. 354, to the effect that, in order to rescind a contract for fraud, one cannot speculate upon a possible profit, but must act promptly to enforce his rights upon learning or discovering a fraud. In furtherance of this rule, it is asserted that appellant did not act promptly after discovering that the premises had been occupied by tenants prior to February 1, 1947, the date fixed for decontrol in the

Federal housing regulations. There is substantial evidence in the record that appellant had no notice of any hearing concerning the control of the premises until some time after the consummation of the sale. The first hearing was held on September 29, 1947, before the chief area rent attorney. His opinion, dated December 9, 1947, related that extended hearings had been held concerning rent control over the premises in question. It found that the four housing units on the premises were suitable for occupancy on or about January 21, 1947, and that some of the apartments were rented and occupied by tenants about that time. The date of the testimony upon which such finding was based does not appear. The record does not disclose whether appellant discovered the truth, concerning material facts which had been represented to her, at the hearing before the chief area rent attorney on September 29, 1947, or at some subsequent date prior to rendition of his opinion on December 9, 1947. It is clear, however, that during the interval of time between the consummation of the sale and notice of rescission of the contract, appellee made repeated efforts to secure a favorable decision from the rent control authorities, including the prosecution of an appeal from the adverse opinion of the area rent attorney. It was not until the rendition of the opinion holding the premises to be subject to Federal rent control regulations that a change of position occurred from which appellant suffered any injury. Ordinarily, a person who charges fraud must allege and prove a resultant injury, as well as all the other essential elements of fraud. (*Finn* v. *Monk,* 403 Ill. 167.) Another element to be considered is that it does not appear that appellee was in anywise misled to his injury, or placed in a worse position than if he had received notice of rescission at an earlier date. (*Szarowicz* v. *Szarowicz,* 338 Ill. 481.) The rule in equity is that where a party desires to rescind upon the ground of fraud, he must, upon the discovery of the facts, at once announce his purpose and

adhere to that decision. A party seeking equitable relief against fraud should commence proceedings for relief as soon as reasonably possible. Acquiescence, consisting of unnecessary delay after such knowledge, will defeat the equitable relief. (*Foston* v. *Swanson,* 306 Ill. 518.) We have already concluded that the chancellor was warranted in finding that the purchase of the premises was induced by fraud. The conduct of appellant, between the time the sale was consummated and notice to rescind was given, does not show acquiescence on her part. The evidence does not disclose any such unexplained and unnecessary delay, after knowledge of the fraud, as to defeat the right of appellant to seek and obtain equitable relief.

For the reasons stated, the judgment of the Appellate Court for the First District, in so far as it reversed the decree of the trial court, is reversed, and the decree of the superior court of Cook County affirmed.

*Appellate Court reversed; superior court affirmed.*