## WILLIAM F. SMITH *et al.*

*v.*

## NATHAN WEAVER.

1. CONTRACT—*whether a contract of sale, or a mere offer to sell.* A memorandum written on defendants' books, reciting, "sold to N. W. a bill of lumber to complete a house for himself, at the following prices, providing he builds this fall or wishes to get the lumber this fall," naming different kinds of lumber and the price per thousand, but no quantity of either kind, and signed by N. W., constitutes no contract of sale of any lumber. It is but a mere offer or proposition, not binding on either before notice of acceptance; and the payment of money in advance, without an acceptance of the offer, does not change the rule.

2. Where a lumber dealer makes an offer to furnish lumber for a building at stated prices, and receives money on the same, but the contract is never closed by an acceptance of the offer, though a portion of the lumber is delivered, and the other party concludes not to build, and demands a return of his money, the dealer may treat such lumber as has been obtained as sold at the prices named, or withdraw his offer and charge what the lumber sold is reasonably worth, and retain enough of the money for its payment, but can not keep the balance.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. PORTER & MOSHER, for the appellants.

Messrs. STEWART, PHELPS & GRIER, for the appellee.

Mr. JUSTICE BAKER delivered the opinion of the Court:

On the 20th day of July, 1875, Weaver, the appellee, went to the office of appellants, Smith & Soule, who were lumber merchants, and a memorandum was written out by Soule on the firm books, and signed by appellee. Said memorandum read as follows:

" Sold this day to N. Weaver a bill of lumber, to complete a house for himself, at the following prices, providing he builds this fall, or wishes to get the lumber for the house this fall:

| | |
|---|---|
| Joists, scantling and timber, 20 feet and under - | $15 per M. |
| 1 inch 1st and 2d clear - - - - | 45 " |
| 1¼ and 1½ 1st and 2d - - - - - | 50 " |
| 2 inch clear - - - - - - | 55 " |
| No. 1 flooring - - - - - - - | 33 " |
| No. 2 " - - - - - - | 30 " |
| No. 1 siding - - - - - - - | 25 " |
| No. 2 " - - - - - - | 20 " |
| Fraker shingles - - - - - - | 4.50 " |
| Star A " - - - - - - | 4 " |
| Lumber, dressed - - - - - - | 20 " |

Windows, doors and blinds, N. Gellis & Co. price list, 40 per cent off.

*July* 20, 1875.                    NATHAN WEAVER."

Appellee was in the office nearly two hours. The memorandum was made and signed soon after he first went in, and Soule had no idea he was going to pay anything on the lumber. Some considerable time after signing the memorandum, and the last thing before he left, appellee said he had $500, and would just as leave pay it then as at any time, and thereupon he paid $500 to appellants. On the last day of August and early in September he got lumber, amounting to $38.01. Thereafter he determined not to build that fall or winter, and in the latter part of September the roads became so bad that he concluded it would be out of the question to haul the lumber that season. He then demanded appellants should return to him the balance of the money, after deducting payment for the lumber he had got. They refused to comply with such demand, and thereupon he brought suit and recovered judgment.

The material question that arises in the case is as to the construction to be given to the written memorandum hereinbefore set forth. It was not a contract of sale—it was a mere offer made by appellants to appellee to let him have lumber at certain specified prices. This offer might have been revoked by appellants, if not at any time before the de-

livery of the lumber, at least at any time before the offer had been accepted by appellee for some definite quantity. It imposed no obligation on appellee to take the lumber, but if he had got it, it would, in the absence of any subsequent agreement otherwise, have required him to pay the specified prices; or, if he had afterwards notified appellants that he would take any certain or fixed quantity, the offer being thereby accepted to that extent, it would have become a binding contract therefor. By the terms of the instrument he was only to get the lumber, and at the designated rates, provided he built or wished to get the lumber for his house that fall. After he had determined neither to build nor get the lumber that fall, what quantities of the several kinds of lumber, and at what prices, was he bound to take? Suppose no money had been deposited, and appellee had got just the amount of lumber he did get, and had refused to take more, and that appellants had sued for a breach of contract, for damages, in regard to what quantities and what kinds of lumber could they have recovered? It is true, the word "sold" is used in the instrument; but, then, the whole instrument must be construed together, and when this is done, it is plain there is no valid contract to bind any one. Appellee might conclude, as he did, not to build or get the lumber, and appellants might conclude, at any time before either the lumber was got or offer accepted, to withdraw their proposition.

If no money had been paid, it is evident appellants could not have maintained an action for lumber sold, further than for that actually delivered. In case appellants had repaid or tendered to appellee the money, and had withdrawn their offer, it is equally plain that appellee could not successfully have sued them for a breach of contract. And it would, indeed, be an anomaly if there could be a valid executory contract when neither party is bound to do or not to do anything.

The money subsequently paid to appellants was not so paid for lumber sold and delivered, but it was only paid in anticipation, intended to be applied in payment for lumber it was

expected by both parties would be sold and delivered. It was an afterthought on the part of appellee,—paid at his own suggestion and of his own volition,—and had no effect to change or modify the memorandum. When appellee elected not to take the lumber, appellants had a right either to retain so much of the money in their hands as the lumber delivered amounted to at the prices specified in the memorandum, thereby treating the offer as severable, and the subsequent getting of some lumber as an acceptance and contract to the extent of the items performed, or to consider their proposition as not accepted and wholly at an end, and retain what the lumber actually delivered was reasonably worth. The balance of the money should have been paid back to appellee on demand.

In the view we take of this case, it is unnecessary to consider the exceptions taken by appellants to the rulings of the court in regard to the instructions. There is no controversy about the material facts. These facts justified the verdict of the jury. No contrary verdict would be allowed to stand. Substantial justice has been done. A judgment will not be reversed for the simple reason some error of the court, that has injuriously affected the rights of no one, may have intervened.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*

DICKEY, J.: I think the payment of the $500 was an election to take that much lumber that fall, and that after receiving the money the vendors were bound to deliver that much lumber, and neither party had the right to revoke the arrangement. If so, appellants were only bound to furnish lumber, and not having failed to do this on demand, had not violated the contract. I think the judgment ought to be reversed.

SHELDON, J.: I concur with Mr. Justice DICKEY.

WALKER, J.: I am unable to concur in the conclusion reached by the majority of the court in this case.