# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

---

J. A. CORBETT, Appellant, *vs.* BYRON E. CRONKHITE,
Appellee.

*Opinion filed February 19, 1909—Rehearing denied April 8, 1909.*

1. CONTRACTS—*equity may inquire into real consideration for a sealed contract.* In a proceeding for specific performance the court may inquire into the real consideration, notwithstanding the contract is under seal.

2. SAME—*consideration must not only be given but be received.* The consideration for a contract to hold an offer open for a specified time must flow from both parties, and must not only be given by the promisee but must be accepted and received by promisor.

3. SAME—*option contract made without consideration may be withdrawn.* Where the promise to keep a land offer open for a specified time is made without consideration it may be withdrawn by the promisor at any time before acceptance by the promisee.

4. SAME—*what does not constitute consideration for contract.* If the promisor's agreement to keep a land offer open for a specified time is without consideration, such consideration is not supplied by the fact that the promisee, before the offer was withdrawn, incurred some expense in investigating the promisor's land, since the fact of his incurring expense does not bind the promisee to accept the offer, and hence does not preclude the promisor from withdrawing the offer before acceptance.

CARTWRIGHT, C. J., and SCOTT and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

This was a bill for specific performance of a contract for exchange of lands. Appellant, a banker living at Philo, in Champaign county, was the owner of a farm of 871 acres in Bond county, Illinois, which he had placed with Jason S. Williams to sell. The appellee was a farmer living near Rossville, Vermilion county, and owned 3080 acres in Matagorda county, Texas, which he had placed with Stephen Evans for sale or trade. Evans told Williams that he had the Texas land to sell or trade, and thereupon, by appointment, Evans and Cronkhite went to Greenville, Bond county, November 5, 1906, to meet Williams and look at that land. The next day they were taken by Williams in a carriage to see the land and drove across and around it. On their return to Greenville, as Williams stated that he was not prepared to say at once what he could do but could tell if fifteen days were given him to investigate, they went to a lawyer's office and a contract was prepared. The essential features thereof as applicable to this case are as follows:

"This agreement, made this 6th day of November, A. D. 1906, between Byron E. Cronkhite, of Vermilion county, Illinois, party of the first part, and Jason S. Williams, of Champaign, Illinois, party of the second part.

"*Witnesseth:* That in consideration of the covenants hereinafter contained, the said party of the first part agrees to convey, by warranty deed, to the party of the second part, or whomsoever he may direct, the fee simple title to the 3080 acres owned by him, * * * in Matagorda county, Texas. * * * Said land is to be conveyed to said second party free and clear of all encumbrances, and possession thereof to be given upon the final completion and passing of all papers mentioned herein. Said party of the first part

agrees to furnish an abstract of title brought down to date of closing of the deal, showing good and merchantable title to said 3080 acres, free and clear of all encumbrances. And the said party of the second part, in consideration of the premises, agrees to and with the said party of the first part to advise him (said first party) within fifteen days from the date hereof, as to whether he will convey or cause to be conveyed, by good and sufficient warranty deed, in fee simple, 871 acres (describing it) in Bond county, Illinois, * * * and the wife or wives of the present owners to join therein, and said deed to be made free of all encumbrances except the present mortgage on said 871 acres, being in the sum of $25,000. Possession of the buildings on the said 871 acres to be given January 1, 1907, and possession of the balance of said premises to be given not later than March 1, 1907. The insurance policy on the buildings on said last mentioned property are to be assigned to the said first party, and the said second party agrees to furnish an abstract of title, brought down to date of closing the deal, showing good merchantable title to said 871 acres, except the encumbrances aforesaid. Taxes for 1906, due in 1907, to be paid on respective properties by present owners. The deal to be closed and the conveyances made, as herein provided, within thirty days from this date, or as soon thereafter as the abstracts can be furnished and extended.

"In witness whereof we have hereunto set our hands and seals the day and date above written. Done in duplicate."

Two copies of this contract Cronkhite signed and sealed and gave to Williams, keeping an unsigned copy. The pleadings being settled, the matter was referred to a special master to hear evidence and report conclusions. After reviewing the evidence he reported that specific performance should not be required of the appellee but that the complainant should be left to his remedy at law. The chancellor, on hearing the exceptions to this report, dismissed the

bill for want of equity. From that decree this appeal has been perfected.

H. E. CORBETT, LEFORGEE & VAIL, and REARICK & MEEKS, for appellant.

G. W. SALMANS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The authorities are generally agreed that an optional contract to convey land, founded on a proper and valuable consideration, may be specifically enforced upon an acceptance of the terms of the contract and a tender of the price within the time specified. (*Mier* v. *Hadden,* 118 Am. St. Rep. (Mich.) 586, and note.) This rule of law is admitted by both parties. It is contended by appellee, however, that this contract is of that class where the promisor binds himself to execute the promise on his part upon the happening of a condition, or upon the performance or payment, within a stated period of time, by the other party, of certain acts or considerations. Up to the time of such performance, undertakings of that class usually lack the elements of binding contracts. The promisee not being bound at all, the promisor is at liberty to revoke the promise on his part at any time before acceptance or performance. (*Frue* v. *Houghton,* 6 Colo. 318.) The appellee contends that he revoked this contract before it was accepted.

Appellee and his agent, Evans, testified that on Monday, November 12, six days after appellee signed the contract, they met Williams at the Ætna House, in Danville, Illinois, and there told him that appellee withdrew his offer to trade and would not carry out the contract; that at that time the offer had not been accepted by appellant or by Williams for him. This is not contradicted by the testimony for the appellant, although Williams claimed that the conversation at the Ætna House was later, about Thurs-

day, November 15, and asserted that at that time he told appellee and Evans, in reply to the notice of revocation, that it was a poor time to talk of withdrawing from the trade, as he knew that appellant was willing to close the deal and he (Williams) expected it to go through. Appellant did not meet or have any talk with appellee or his agent until after this notice of withdrawal. It appears from the testimony that there was some talk about Williams going to Texas to investigate as to the appellee's land, and that possibly Evans might accompany him, both starting from Danville on Tuesday, November 13, 1906. F. E. Webb, a resident of Danville, testified that he saw Williams at the Ætna House on Sunday, November 11, 1906; that Williams showed him the contract in question at that time and it was signed only by appellee; that Williams discussed his intended trip to Texas, saying he planned to go the following Tuesday; that he saw Williams again on the following Wednesday or Thursday and asked him why he had not gone to Texas, and Williams replied that he had expected to go, but "the old devil is trying to kick out of the trade and I signed the contract and sent it to him." Williams did not deny this conversation with Webb. We think the evidence in the record fully justified the master's finding that the appellee told Williams, November 12, 1907, that he wished to withdraw his offer under the contract, and that neither appellant nor his agent, Williams, had accepted the contract before this notice of withdrawal; that such acceptance was not made until November 13 or 14.

Appellant, while not conceding that appellee attempted to withdraw from the contract before it was accepted, argues that even though appellee did so attempt, the contract, under the law, could not be revoked within the fifteen days except by the consent of both parties. He first insists that the contract was under seal, and therefore appellee was estopped from denying that there was a consideration, citing *O'Brien* v. *Boland*, 166 Mass. 481, and other like authori-

ties. The contract is silent on the question of considera-
tion. Does the seal import such a consideration that the
real consideration cannot be inquired into in a specific per-
formance proceeding in equity? We think not. "Equity
will never enforce an executory agreement unless there was
an *actual* valuable consideration, and, unlike the common
law, it does not permit a seal to supply the place of a real
consideration. Disregarding mere forms and looking at the
reality, it requires an actual valuable consideration as es-
sential in every such agreement, and allows the want of it
to be shown, notwithstanding the seal, in the enforcement
of covenants, settlements and executory contracts of every
description." (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1293.)
In Anson on Contracts, (2d Am. ed. p. 61,) in discussing
the question of consideration, that author states that equity
"would not extend its peculiar remedy of specific perform-
ance to gratuitous promises, even though they were under
seal." In Clark on Contracts (2d ed. p. 60,) it is stated:
"The idea of consideration as a necessary element of con-
tract has always met with peculiar favor in courts of chan-
cery. Equity will not grant its peculiar remedy of specific
performance nor exercise its peculiar power to correct mis-
takes and reform contracts where the promises are with-
out consideration, even though they are under seal." In
Bishop on Contracts (sec. 119 and 120) that author states:
"A sealed instrument is binding in a court of law though
no consideration is mentioned in it and though there is none
in fact. The seal is said to import a consideration and to
estop the party from denying it. But though a court of
equity holds this general doctrine, * * * yet it will not
interfere with its special remedies, such as to aid a defective
conveyance of land or decree specific performance of a cov-
enant to convey, where there was no consideration in fact."
The rule as quoted above from Pomeroy was referred to
with approval by this court in *Crandall* v. *Willig,* 166 Ill.
233, where it was said (p. 239): "True, the contract was

under seal and purported to be based upon the nominal consideration of one dollar; but the evidence showed that there was, in fact, no consideration whatever, and it is well settled that in equity the real consideration may be inquired into, and the parties are not concluded by the recitals in the contract, though under seal." In the recent case of *Poe* v. *Ulrey,* 233 Ill. 56, this court sanctioned the rule as laid down in *Crandall* v. *Willig, supra.* We think this rule is supported by the great weight of authority and may now be considered the settled law in this State.

Appellant further contends that this court has held that an optional contract to convey land, without any corresponding obligation or covenant to purchase, will be specifically enforced in equity if made upon a sufficient consideration; (*Guyer* v. *Warren,* 175 Ill. 328;) and, while there is no consideration expressed in this contract, that immediately after it was signed by appellee appellant began to investigate the Texas land by telegrams and correspondence, and thereby incurred an expense of something over $25; that this expense, necessarily incurred before appellee attempted to withdraw from the contract, furnished a sufficient consideration to bind appellee. Counsel for appellee insists that there is no clear proof that these expenses were incurred before Williams was notified, November 12, of the revocation of the contract. There is some ground for this contention, as the copies of the letters or telegrams were not offered in evidence and no definite dates were given as to the time when they were sent. But conceding that the proof shows that appellant incurred this expense previous to the revocation, is this such a valuable consideration as would prevent appellee from withdrawing from the contract during the fifteen days? "The rule of law is," says Story, "that the party making such an offer may retract it at any time previous to its acceptance by the other party, and an acceptance subsequent to such retraction would create no contract although it should be within the time

originally prescribed; and the ground upon which this rule is said to be founded is that, the offer being merely gratuitous, there is no sufficient consideration to support it until it is accepted." (1 Story on Contracts,—5th ed.—sec. 495.) While both Story and Wharton (Contracts, sec. 13,) argue that the contrary rule would be more consonant with justice and the agreement of the parties, both writers state that the authorities hold as set forth in the above quotation from Story. The general rule as to consideration is that it "must flow from both parties. A promise to pay money does not make a contract unless there be reciprocal obligation. In contracts everything requisite ought to concur, as the consideration on the one side and the promise or sale on the other side. * * * Not only is it the principle of law that both parties must receive a benefit from the contract, but it is also the rule that the law only considers that as a benefit, in cases of contracts purely executory, which it can assure to the other party." (Batten on Contracts, 67 Law Lib. *60.) Even though an offer is in writing and by its terms is to stand for a specified period, when there is "no money consideration and no corresponding promise from the person to whom it is made, the promise not to withdraw it has no binding force. If a consideration for the undertaking to leave the offer open is given and accepted, this constitutes, of itself, a contract, and the offer cannot be withdrawn." (Bishop on Contracts, sec. 325.) The authorities are practically unanimous that the consideration must flow from both parties, and that it must not only be given by the purchaser, but must as well be accepted and received by the other party to the contract.

*Plumb* v. *Campbell*, 129 Ill. 101, does not support appellant's contention on this point. In that case this court quoted with approval from Parsons on Contracts, (vol. 1, sec. 450): "Here it is said that the party making the promise is bound while the other is at liberty to do anything or nothing. But this is a mistake. The party mak-

ing the promise is bound to nothing until the promisee, within a reasonable time, engages to do, or else does or begins to do, the thing which is the condition of the first promise.  Until such engagement or such doing the promisor may withdraw his promise, because there is no mutuality and therefore no consideration for it.  But after an engagement on the part of the promisee which is sufficient to bind him then the promisor is bound also, because there is now a promise for a promise, with entire mutuality of obligation.  So if the promisee begins to do the thing in a way which binds him to complete it, here is also a mutuality of obligation."  We cannot see how this doctrine helps appellant.  The mere fact that he had incurred expense did not bind him to the contract.  He was not bound until he accepted the contract, and before he did so it was revoked by appellee.

In enforcing a unilateral contract the courts will exercise their discretion with great care.  (*Crandall* v. *Willig,* *supra.*)  We believe it to be well settled that where the promise on the part of the promisor to continue an offer for a specified time is made without consideration it is *nudum pactum,* and can be withdrawn at any time before the other party has accepted the offer.  The offer being without consideration, the appellee not only had a right to revoke it before acceptance, but did so revoke it.  The following authorities, among many others, support the conclusions here reached:  *Larmon* v. *Jordan,* 56 Ill. 204; *Hayes* v. *O'Brien,* 149 id. 403; *McCauley* v. *Coe,* 150 id. 311; *Gross* v. *Arnold,* 177 id. 575; *Carter* v. *Love,* 206 id. 310; Pomeroy on Contracts, sec. 169; *Bradford* v. *Foster,* 87 Tenn. 4; *Weaver* v. *Burr,* 31 W. Va. 736; *Litz* v. *Goosling,* (Ky.) 21 L. R. A. 127, and note; *Womack* v. *Coleman,* 92 Minn. 328; Waterman on Specific Performance, sec. 134; *Houghwout* v. *Boisaubin,* 18 N. J. Eq. 315; *Kirby-Carpenter Co.* v. *Burnett,* 144 Fed. Rep. 635.

In view of what has been said we will not be required to discuss the other questions argued in the briefs.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

CARTWRIGHT, C. J., SCOTT and DUNN, JJ., dissenting.