LEWIS ANDERSON, Appellant, *vs.* MARTHA ANDERSON *et al.* Appellees.

*Opinion filed October 25, 1911.*

1. CONTRACTS—*when option to purchase is for the term of the lease.* An agreement whereby the owner of land leases the same for the term of ten years at a fixed annual rental, and which further provides that the owner agrees to sell to the lessee "at any time," if the lessee so desires, at a stated sum per acre, gives the lessee an option to purchase at any time during the ten years.

2. SAME—*when a unilateral contract may be enforced.* A unilateral contract to sell land may be specifically enforced if it is otherwise valid, fairly entered into and based upon sufficient consideration.

3. SAME—*a contract made without a full understanding of its terms may be ratified.* The fact that the owner of land, when executing a ten-year lease with an option to purchase at a fixed price, understood that the agreement merely gave the lessee the first chance to purchase, does not prevent specific performance, where the owner read the contract over a few days after its execution and ratified the same.

4. SPECIFIC PERFORMANCE—*discretion in matter of specific performance is not arbitrary.* While specific performance rests in the sound discretion of the court such discretion is not arbitrary, and if the contract is valid at law, fairly entered into and unobjectionable in the features which address themselves to the discretion of the court it should be specifically enforced.

5. SAME—*an increase in value of land does not justify refusing specific performance.* The mere fact that land has largely increased in value since the making of a contract for its sale does not warrant the court in refusing to specifically enforce the contract, where there are no circumstances indicating over-reaching, fraud or bad faith by the purchaser.

6. SAME—*fairness of contract is ordinarily determined as of its date.* In considering the fairness of a contract it is usual to determine that question with reference to the time the contract was made, unless the delay in carrying it out is caused by the party seeking its performance.

7. SAME—*purchaser with notice of prior contract to sell is regarded as a trustee.* One who purchases land with full notice of a prior contract by the vendor to convey to another person may be regarded as a trustee for the latter and be decreed to convey the land in the same manner as his vendor.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDGAR ELDREDGE, Judge, presiding.

BROWNE & WILEY, for appellant.

L. B. OLMSTEAD, and McDOUGALL & CHAPMAN, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree dismissing, for want of equity, a bill filed in the circuit court of LaSalle county by appellant, Lewis Anderson, against appellees, for the specific performance of a contract for the sale of real estate. The case was referred to a master in chancery to take evidence, and upon the filing of his report said decree was entered.

Appellee Martha Anderson was at the date of the contract in question about fifty-four years of age, and it is stipulated that she was then, and at the time of the trial, in full, complete and perfect possession of her faculties,—a woman of more than ordinary brightness and sagacity of

mind, who could read and write and thoroughly understood the English language and always transacted her own business affairs. She and her husband, Christopher Anderson, had agreed upon a separation shortly before this contract was executed and were then living apart but were not divorced. In the separation their farm of 227 acres was divided, the husband taking about two-thirds (or 151 acres) and Mrs. Anderson taking about one-third, (being the 76 acres in controversy here,) she also taking some town property as a portion of her share. Christopher Anderson's part was improved by good farm buildings while the portion of the farm taken by Mrs. Anderson had no buildings. They had three sons, including appellant, Lewis, and four daughters, of whom appellees Melissa Benson and Enger Parks were two. November 24, 1899, Martha Anderson and her son Lewis signed the following instrument:

"This indenture made this 24th day of November, 1899, wherein Mrs. C. Anderson is party of the first part, and Lewis Anderson party of the second part wherein the party of the first leases to the party of the second part the (76) acres seventy-six acres located in S. W. ¼ of sec. 15, Adams township, for the term of ten years (10 yrs.) the party of the second part agrees to pay rent to the amt. of $300 per annum as follows: $150 October 1, 1900, and $150 March 1, 1901, each year thereafter at the same time and rate. The party of the first part further agrees to sell to the party of the second part at any time if the party of the second part so desires, at the sum of eighty-five ($85) per acre. Party of the second part also agrees to haul out manure on said land and to farm same in a workmanlike manner.

(Seal.)                              MRS. C. ANDERSON,
                                     LEWIS ANDERSON."

Appellant and his mother were the only persons present when the agreement was executed. He testified that he had rented and worked the whole 227 acres of the farm in 1899, his mother living in the town of Leland, in LaSalle county; that she said she wanted the farm to stay in the family, and asked him to buy her part as well as his father's portion; that he told her he did not want to buy unless he bought the whole farm, and he did not have the money to

do this; that she said if he would buy the father's part she would rent her 76 acres to appellant for ten years, with the privilege of buying it for $85, or possibly $75, per acre when he had the money; that this conversation was in his mother's house at Leland, on the afternoon of November 24, 1899; that he then went to his brother-in-law's place of business and asked him to prepare the agreement in question, and returned shortly with it to his mother's house, it then being about five o'clock in the afternoon; that when he returned he told her what the contract contained,—that it was to rent for ten years, with the privilege of buying; that she took it, looked at it for awhile and then asked if he would read it to her, and he read and explained it to her; that she said it was all right, and signed it. Mrs. Anderson testified that she understood her son Lewis was intending to buy her husband's part of the farm, and that she told the son if he did so she would rent him her part, and that if she concluded to sell he should have the first privilege of buying; that this was in the afternoon, and her son then went out and came back between eight and nine in the evening and asked her to sign the paper. "I says, 'O, Louie! I cannot sign it to-night; I couldn't see.' He said, 'O! it is nothing to sign, only that I get the first chance to buy the land.' I said, 'Lewis, you know you will have the first chance to buy it.' " She further stated that, of course, she thought a good deal of her son and wanted to be good to him; that they had talked the matter over that afternoon but made no agreement. After they executed the agreement Lewis took it and left it with a neighboring justice of the peace, Thompson, telling his mother that she could go and see it there when she wished. The evidence shows, without contradiction, that she went to the justice's office three or four days after the contract was executed and had the justice read it over to her. September 23, 1904, Martha Anderson and her husband conveyed the said 76 acres to their daughters Melissa

Benson and Enger Parks for the expressed consideration of one dollar. The testimony of the three appellees is not clear on the question, but, stated most favorably to their contention, it is evident that there was no money paid by the two daughters to their mother at the time they received the deed, except the one dollar, and no definite arrangement for paying any money or other valuable consideration thereafter, although it seems they had given their mother for her support, between the date of the deed and the hearing before the master, about the same amount per year as she had been receiving from appellant, before the deed was executed, for the rent of the land. A short time before this deed was executed Martha Anderson called her children together and stated that she wished to have definite arrangements made about the farm; that she was not able to live off the rent money, and desired to sell. There is some controversy as to just what was said during this conference, but it is manifest that Lewis Anderson was asked to buy the farm at a price much higher than that stated in the contract, and that he refused to make any arrangement in addition to the writing already entered into and thereupon left. Thereafter the land was deeded to the two daughters. Some time in August, 1906, appellant went to his mother's house with two witnesses and tendered her the amount called for by the agreement, in legal tender, and asked for a deed of the farm, which she refused, saying she had already conveyed it to her two daughters. It is stipulated that at the time the agreement was made the land in question was worth not more than $85 per acre, and it appears to be agreed that since that time it has advanced in value and is now worth from $125 to $140 per acre. Lewis Anderson, after making this agreement with his mother, bought the 151 acres belonging to his father for $90 an acre, including the buildings and improvements, worth some $4000, but had sold said 151-acre tract previous to the hearing of this suit. The contract in ques-

tion was filed for record in the recorder's office of LaSalle county September 14, 1904, nine days before the execution of the deed to the two daughters.

Counsel for appellees concede that the description of the property is sufficiently definite to require specific performance of the contract in the absence of other defenses. The only question raised as to the certainty of the contract, from its wording, is as to the time within which the option to purchase must be carried out. Fairly construed, the contract gave Lewis Anderson an option to purchase the farm for $85 per acre at any time within the term of the ten-year lease. Whatever may have been Mrs. Anderson's understanding of the contract at the time she signed, it is clear from this record that she fully understood it three or four days afterward, when it was read to her by the justice of the peace, and that she received the rent from appellant as it fell due under the contract and never told him that she was dissatisfied with it or raised any objection to carrying it out until some four years or more after it was signed. The evidence shows conclusively that the son had carried out all the terms of the contract as to renting and worked the farm satisfactorily up to the time the deed was executed to the daughters. We think the weight of the evidence shows that the contract was fairly entered into, without misrepresentation, over-reaching or sharp practice on the part of appellant and with no misapprehension as to its terms on the part of Mrs. Anderson. Even if she did understand, on the afternoon or evening when she executed it, that it merely provided that her son should have the first chance to purchase, she does not claim that she had any such understanding after she examined it several days later. A contract entered into without full understanding of its terms can be ratified thereafter so as to make it binding upon the parties the same as if it was fully understood before its execution. (*Phelps* v. *Pratt,* 225 Ill. 85; Hare on Contracts, 299.) This record shows that

Mrs. Anderson by her actions ratified the contract in all its terms after they were fully understood by her. It is true, specific performance is not a matter of right but rests in the sound discretion of the court, to be determined by the particular facts of the case. (*Sugar* v. *Froehlich,* 229 Ill. 397.) But this discretion is not an arbitrary or capricious one,—rather it is a sound judicial discretion, regulated by the established principles of equity. The specific performance of a contract to convey land is as much a matter of course as an action of damages for its breach, and a court will ordinarily grant such relief where the contract is valid at law, fairly entered into and unobjectionable in any of its features which address themselves to the chancellor's discretion. *Cumberledge* v. *Brooks,* 235 Ill. 249; *Zempel* v. *Hughes,* 235 id. 424.

The chief argument of counsel for appellees is, that the rise in the value of the land since the contract was entered into renders it unconscionable to enforce it as against the mother. In considering the fairness or hardship of a contract the usual rule is to decide those questions with reference to the time when the contract was made, unless the delay in carrying it out is caused by the person seeking performance. The mere fact that the value of the property contracted for has increased or diminished since the contract was executed ordinarily will not warrant a refusal to carry out its terms, in the absence of circumstances indicating fraud or bad faith. (*Estes* v. *Furlong,* 59 Ill. 298; Pomeroy's Specific Performance, sec. 178; 26 Am. & Eng. Ency. of Law,—2d ed.—69, and cases cited.) Eighty-five dollars an acre was as much as the land was worth at the time the contract was executed. While the value has risen, each party had at that time equal means of knowledge as to the probability of such a change. While courts will exercise their discretion with great care in enforcing a unilateral contract, (*Corbett* v. *Cronkhite,* 239 Ill. 9,) yet when such a contract is otherwise valid, fairly entered into and for

sufficient consideration, equity will enforce its specific performance. (*Hayes* v. *O'Brien*, 149 Ill. 403; *McCauley* v. *Coe*, 150 id. 311; *Guyer* v. *Warren*, 175 id. 328; *Adams* v. *Peabody Coal Co.* 230 id. 469.) On reason and authority we find nothing in this record that would justify a court of equity in refusing to enforce this contract against Mrs. Anderson.

There is nothing unconscionable in enforcing the contract as against the daughters and declaring the deed void, as the record shows conclusively that they took the deed with full notice of the contract and knew at the time it was executed and delivered to them that appellant claimed his contract was enforceable. One who purchases property with notice of a prior agreement by the vendor to convey to another person may be regarded as the trustee of the latter and decreed to convey the land in the same manner as his vendor. *Forthman* v. *Deters*, 206 Ill. 159.

The decree of the circuit court will be reversed and the cause remanded to that court, with directions to enter a decree in conformity with the prayer of the bill.

*Reversed and remanded, with directions.*