## Beth Weber, Appellee, v. Thomas H. Hulbert, Appellant.

### Gen. No. 27,035.

1. VENDOR AND PURCHASER—*revocability of proposal to purchase land.* A written proposal to buy land, signed and acknowledged and delivered to the agent of the owner of the land, to become operative upon acceptance of the terms by such owner, may be revoked at any time before acceptance, and when the evidence shows a withdrawal of such proposal by the purchaser before notification of acceptance, it prima facie establishes a contract not completed.

2. VENDOR AND PURCHASER—*when proposal to purchase land void for want of mutuality.* Where a purchaser of land received a receipt for a portion of the money paid on account of a "proposal to purchase," and later was given the so-called "proposal to purchase," whereby the property "if conveyed" was to be conveyed by warranty deed, there being an acknowledgment of the money paid "on deposit on the proposal," and there being a provision that the owner might return all money paid, giving a right to refuse to convey, the so-called proposal to purchase, if a contract, was unilateral, lacking in mutuality and void.

3. VENDOR AND PURCHASER—*right to recover back money paid on*

*a proposal to purchase.* One offering to purchase land under an agreement called a "proposal to purchase" which does not bind the owner to convey the land, and which is void for lack of mutuality, is entitled to recover money paid on such proposal in an action for money had and received, there being no consideration for the money paid.

4. VENDOR AND PURCHASER—*when owner not bound to convey land.* An owner of land who sells it under an agreement called a "proposal to purchase" which in fact contains no agreement binding the owner to convey the land to the purchaser, and which is void for want of mutuality, is not bound to convey the land involved because of the fact that he withdraws it from sale for a certain period, because of the fact that he pays commissions to an agent for procuring the purchaser, or because he improves the land by placing a cement sidewalk adjacent thereto.

Appeal from the Municipal Court of Chicago; the Hon. ROBERT E. GENTZEL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1921. Affirmed. Opinion filed May 23, 1922. Rehearing denied June 6, 1922. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On October 14, 1919, Beth Weber, plaintiff, commenced an action of the first class in assumpsit in the municipal court of Chicago against Thomas H. Hulbert, defendant, to recover the sum of $1,250, which she had previously paid to defendant under circumstances hereinafter mentioned. The cause was tried before the court without a jury. The court found the issues against defendant and assessed plaintiff's damages at $1,250, and on March 8, 1921, entered judgment against defendant in that sum. This appeal followed.

In August, 1919, plaintiff was engaged in business at No. 36 South State street, Chicago, and defendant had an office at No. 81 East Madison street, where he was engaged in selling lots in a subdivision owned by him and known as the "Hulbert Fullerton Avenue Highlands Subdivision No. 11," in Chicago, Illinois. One Everett Ham was an agent of defendant employed to make sales of the lots. On August 19, 1919, Ham met plaintiff, and solicited her to buy one or

more of the lots as an investment. Late in the afternoon of that day Ham, plaintiff and a friend of plaintiff's visited the subdivision and plaintiff was shown (among others) a certain corner lot and urged to purchase it at the price of $12,500. Early the following morning Ham called at plaintiff's place of business and had an interview with her, which resulted in plaintiff delivering to Ham her check drawn on the First National Bank of Chicago for $1,250, payable to defendant's order, and Ham delivering to plaintiff a receipt signed by him and which plaintiff also signed. The receipt is as follows:

"Chicago, August 20, 1919.

"RECEIVED from Miss Beth Weber $1,250, *on account of her proposal for purchase* of Lot 1 in Subdivision No. 11 in The Fullerton Avenue Highlands for the price of $12,500, without interest; ————— dollars more to be paid on or before ————19——, and the balance in installments of $125 on or before the 1st day of each and every month after. *This receipt being issued subject to prior sale and to acceptance by Thomas H. Hulbert. The said sum to be returned in case of prior sale or non-acceptance.*

(Signed) EVERETT HAM.

"I accept the above price and terms.

(Signed)  BETH WEBER."

Ham testified that after receiving plaintiff's check he took it, together with a duplicate copy of the receipt, to defendant's office, where, according to custom, a form of a "proposal" to be signed by plaintiff in duplicate was drafted and given to him, and about noon the same day (August 20) he took the same to plaintiff, who signed both copies, and he immediately returned them to defendant's office. The said "proposal" as presented to and as signed by plaintiff is as follows:

"Chicago, Illinois, August 20, 1919.

"I hereby propose to purchase from Thomas H. Hulbert, for the price of $12,500, without interest, Lot No. 1 in The Hulbert Fullerton Avenue Highlands

Subdivision No. 11, * * * in the City of Chicago, County of Cook, State of Illinois, and to make payment to him therefor, at 81 East Madison street, or at such other place as he may hereafter designate, as follows:

$1,250 on the date hereof, and not less than $125 on the 1st of each and every month after September, 1919, until the sum of $6,250 shall have been paid on this proposal to purchase, when, upon the deeding of the above described property, the payment of the balance unpaid of the above recited sum of $12,500 is to be secured by the delivery of a note executed by me payable in instalments of not less than $125, each and every month after the date thereof, the payment of which said note is to be secured by a trust deed executed by me and my spouse, if I am then married, conveying the above described property, and thereupon this proposal to purchase shall be canceled and shall become null and of no effect.

The said above described property, *if conveyed,* is to be conveyed by a good and sufficient warranty deed, free from all liens and encumbrances whatsoever, except general taxes payable after January 1, 1921, assessments for improvements at date hereof not yet made.''

(Here follow several enumerated restrictions as to building line, character of buildings to be erected, etc.)

"It is a further condition of this proposal to purchase that neither it nor any rights, or interest thereunder, shall be transferable or assignable, except by and with the written consent of Thomas H. Hulbert, endorsed hereon.

It is a further condition of this proposal to purchase that if any of the payments herein agreed to be made shall be in arrears for more than 60 days, then all of my rights under this proposal shall at once cease and terminate without any right on my part to demand, or recover by suit at law, or otherwise, any monies paid under the terms of this proposal.

It is a further condition of this proposal to purchase that there shall be delivered a guaranty policy

of title, issued by the Chicago Title & Trust Company, showing the title to the above described property in Thomas H. Hulbert, as of this date or such later date as shall be borne by the guaranties of title covering the subdivision of which the above described property is a part.

It is a further condition of this proposal to purchase that there are now or shall be laid or placed, in the street in front of the above recited property, cement walks, sewer and water main, without cost to me.

> MISS BETH WEBER, 36 S. State St.''

"Chicago, Illinois, August 20, 1919.

"Received from Miss Beth Weber, $1,250, *as deposit on the above proposal,* which said sum, together with such further sums as shall have been paid on the said proposal, *is to be returned* if all of the payments agreed in the said proposal to be made have been made promptly as they become due, *if for any fault, failure or neglect chargeable to me the said above recited property shall not be conveyed in accordance with the terms of the said proposal.*

> THOMAS H. HULBERT.''

Plaintiff testified, in substance, that on the following morning, August 21, after making investigations, she was informed by real estate men that the property in question was not worth the sum of $12,500; that she went to the First National Bank for the purpose of stopping payment on the $1,250 check, but was there informed that it had been certified on the previous afternoon, shortly after she had delivered the same to Ham; that during the afternoon or early the following morning (August 22), she personally called at defendant's office and for the first time met him; that she told him that the property was not worth $12,500, that she did not want it, and that she wanted her money back; and that defendant said that he could not return the money, that the deal had been

closed and that he had applied her check on Mr. Ham's commissions. Evidence introduced by defendant showed that on August 21 he had issued checks, payable to the order of Ham and one Mendell, respectively, whereby he paid them commissions aggregating $1,250 on the "Weber" deal, and which checks were paid on August 23.

Defendant testified, in substance, that on August 20 he received from a lady employee of his office the duplicate copies of the proposal signed by plaintiff; that after his cashier had informed him that plaintiff's check for $1,250 had been certified, he signed both copies "Thomas H. Hulbert" below the form of receipt thereon and gave them so signed back to the cashier with instructions to immediately send one of them by registered mail to plaintiff. Defendant introduced in evidence the receipt of the post office for the package, containing said proposal, addressed to plaintiff. It is dated "Chicago, Ill., August 22, 1919." Defendant also introduced the return receipt which discloses that plaintiff receipted for the package and that it was delivered to her on August 23, 1919. Defendant further testified that immediately after he signed said proposal and directed it to be mailed he withdrew the lot in question from the market and did not sell it until February 20, 1920, when he sold it for $12,500 to another party; that since the signing of the proposal he had caused a cement sidewalk to be placed on one side of the lot; and that he personally did not meet plaintiff until August 23, when she visited him in his office and demanded the return of the $1,250. The evidence, however, clearly discloses that plaintiff informed defendant that she did not want the lot and demanded the return of the $1,250, before the registered package was received by her. The evidence further discloses that the package, in addition to the proposal as signed by plaintiff, con-

tained the following letter, dated August 21, 1919, addressed to her:

"Dear Madam: I enclose herein your proposal. I am sure that your Proposal to Purchase will give you many times the profit you could get from any other investment, for it is direct to me, the owner, with no middle-men's profits, at a price which is correspondingly low. I insist that the Hulbert Fullerton Avenue Highlands be handled *on honor,* without misrepresentation *and without any agreement or promise whatsoever other than those contained in the Proposal to Purchase, and I signed the receipt attached thereto with the understanding that this is the basis on which you signed.* * * *

THOMAS H. HULBERT,
Per M. GRAY."

The evidence further discloses that on October 8, 1919, plaintiff's attorneys wrote defendant making formal demand for the return to plaintiff of said $1,250, and that on the following day defendant wrote the attorneys refusing the demand.

Plaintiff's amended statement of claim discloses a claim for money had and received—viz., $1,250, with legal interest thereon from October 10, 1919. The proposal, as so signed by both parties, is attached to the statement and made a part thereof. Plaintiff alleged that no consideration was received by her for the $1,250 paid and that the proposal was never at any time accepted by defendant. Defendant in his amended affidavit of merits alleged that on August 20, 1919, he received through Everett Ham the said check and plaintiff's written proposal; that defendant accepted said proposal and signed a receipt for the payment, which was attached to a duplicate of the proposal and forwarded to plaintiff; that on the same day he withdrew said real estate from sale, and continued to withhold the same from sale until February, 1920; that on August 21, 1919, he paid as commissions to the parties obtaining and delivering said proposal

and check to him the sum of $1,250, which was the usual and customary compensation for the services rendered; that on September 9, 1919, in compliance with the terms of the proposal, he caused to be placed adjacent to the lot a cement sidewalk at a cost of $46; and that plaintiff has never withdrawn or rescinded her proposal, either in writing or orally, neither has she demanded of this defendant, either orally or in writing, the return of said $1,250, in accordance with the terms of the proposal and the receipt.

George W. Wilbur, for plaintiff in error.

McGilvray, Eames, Vaughan & Tilley, for defendant in error.

Mr. Presiding Justice Gridley delivered the opinion of the court.

After carefully reviewing the evidence introduced upon the trial and considering the several points made by counsel for defendant as grounds for a reversal of the judgment, we are of the opinion that the trial court's finding was right and that the judgment should be affirmed.

If the so-called proposal, signed by plaintiff and dated August 20, 1919, be considered as a proposal by her to purchase of defendant the lot therein described, it was withdrawn by her before any acceptance thereof by defendant and notice to her of such acceptance. In the case of *Gross v. Arnold,* 177 Ill. 575, it is decided that a written proposal to buy land, signed and acknowledged and delivered to the agent of the owner of the land, to become operative upon acceptance of the terms by such owner, may be revoked at any time before acceptance, the court saying (p. 577): "It is familiar law an offer to enter into an agreement may be withdrawn at any time while it remains unaccepted. The proof here shows a proposal by the appellees and a withdrawal thereof before notification of acceptance. This prima facie estab-

lishes a contract was not completed. If the appellant in any binding way accepted the proposal before it was revoked it devolved on him to prove such acceptance. We find no proof of that character in the record.'' (See also *Smith v. Weaver*, 90 Ill. 392, 393; *Crandall v. Willig*, 166 Ill. 233, 239; *Corbett v. Cronkhite*, 239 Ill. 9, 17; *Clark v. Potts*, 255 Ill. 183, 188.)

If the so-called proposal, as finally signed by the parties at the times shown, be considered as an attempt to incorporate into a contract all the terms of the purchase of the lot therein mentioned, it is void as a unilateral contract. When, on the morning of August 20, plaintiff gave Ham her check for $1,250, payable to defendant's order, she received a receipt signed by Ham, in which it was stated that the amount was received ''on account of her proposal for purchase'' of the lot in question for the price of $12,500, and that the receipt was issued ''subject to prior sale and to acceptance'' by defendant, and that said sum was to be returned to her in case of prior sale or such nonacceptance. When these things were done it is clear that defendant was under no obligation to make a conveyance of the lot to plaintiff. When later in the same day Ham again called on plaintiff and presented the duplicate proposals to plaintiff for her signature, and she signed them, and Ham had delivered them to defendant, it is equally clear that defendant was under no obligation to make such conveyance. And, in our opinion, after defendant had signed said duplicate proposals and after one copy thereof had been received by plaintiff by mail, defendant was not bound thereby to make a conveyance of the lot to plaintiff even though she should have thereafter elected to make, and did make, further payments up to $6,250. In the third clause of the proposal is the statement: ''The said above described property, *if conveyed*, is to be conveyed by a

good and sufficient warranty deed," etc. Then follows the recital of various restrictions and conditions. Then under plaintiff's signature to the proposal proper there follow certain statements in the form of a receipt, under which appears defendant's signature. He therein acknowledges the receipt from plaintiff of $1,250, "as deposit on the above proposal," but he does not accept the proposal as made. All the agreement on his part is, that, if all the subsequent payments agreed in said proposal to be made by plaintiff have been made promptly when due, said sum of $1,250, together with subsequent payments, is to be returned "if for any fault, failure or neglect chargeable to me the said above recited property shall not be conveyed in accordance with the terms of the said proposal." He does not promise to convey the lot to plaintiff even though the subsequent payments mentioned should be promptly made by her. The mere fact that he has the right, as stated, to return all moneys paid by her presupposes the fact that he has a right to refuse to convey the lot, if he should so desire. The contract, if it is a contract, is unilateral, lacking in mutuality and void. (*Vogel v. Pekoc*, 157 Ill. 339, 342; *Joliet Bottling Co. v. Joliet Citizens Brewing Co.*, 254 Ill. 215, 218; *Kingsbury v. Cornelison*, 122 Ill. App. 495, 500.) This construction of the instrument is strengthened possibly when consideration is given to certain statements contained in defendant's letter of August 21, 1919, which accompanied the instrument as returned to plaintiff, in which he writes that he insists that "Hulbert Fullerton Avenue Highlands be handled on honor, without misrepresentation *and without any agreement* or promise whatsoever *other than those contained in the Proposal to Purchase*, and I signed the receipt attached thereto *with the understanding that this is the basis on which you signed.*" There was no consideration for plaintiff's payment of the $1,250 and for her

promise to make the further payments mentioned, and she was entitled to recover back the $1,250 in an action for money had and received. (*Smith v. Weaver,* 90 Ill. 392, 393; *Bradford v. City of Chicago,* 25 Ill. 411, 424; *Laflin v. Howe,* 112 Ill. 253, 262; *Drennan v. Bunn,* 124 Ill. 175, 186.) The acts of the defendant in withdrawing the lot from the market on August 20, 1919, and withholding it from sale until February 20, 1920, in placing a cement sidewalk adjacent to the lot, and incurring the expenses mentioned for commissions did not bind him to make a conveyance of the lot to plaintiff. (*Corbett v. Cronkhite,* 239 Ill. 9, 17.)

For the reasons indicated the judgment of the municipal court is affirmed.

*Affirmed.*

BARNES and MORRILL, JJ., concur.