(No. 31247.—)

WALTER H. BRUBAKER *et al.*, Appellees, *vs.* GEORGE HATJIMANOLIS *et al.*, Appellants.

*Opinion filed November 22, 1949.*

Manus & Manus, of Freeport, (Albert H. Manus, Jr., of counsel,) for appellants.

Hunter & Hunter, of Freeport, (Robert C. Hunter, of counsel,) for appellees.

Mr. Justice Crampton delivered the opinion of the court:

Defendants-appellants are husband and wife, as, likewise, are plaintiffs-appellees. A decree was entered in the circuit court of Stephenson County against the defendant husband in an action for the specific performance of a contract to convey real estate to plaintiffs. An appeal was taken to the Appellate Court for the Second District; it was transferred to this court because a freehold is involved. *Miller* v. *Pettengill*, 392 Ill. 117; *Lewis* v. *McCreedy*, 378 Ill. 264.

The plaintiffs-appellees filed their action in July, 1946, to have a warranty deed they gave to defendant George Hatjimanolis (hereafter referred to as "defendant") on May 22, 1935, declared to be a mortgage and that they be allowed to redeem the involved property.

The defendant by his answer pleaded the making of a contract the same day between the parties wherein he gave to plaintiffs the right to repurchase the property for $6800 on May 22, 1940, with interest at five per cent, payable quarterly. The plaintiffs were to pay the taxes and insurance. Time was the essence of the contract, and defend-

ant had the right, at his option, to declare a forfeiture thereof in event of any default by plaintiffs. The answer alleged nonpayment of the principal on May 22, 1940, forfeiture of the contract, and the making of an oral agreement between plaintiffs and defendant whereby the former became mere tenants of the property at a monthly rental of $25 plus payment of taxes. Default in payment of rent was alleged, and defendants asked to be decreed owners of the property, the plaintiffs to be evicted by the court. The reply denied any knowledge, or possession, of the written contract. When it was signed by plaintiffs, they believed it to be an instrument which, along with others made contemporaneously, constituted a trust deed. Receipt of notice of any forfeiture was denied; also denied was any act of forfeiture, or that the alleged oral contract of tenancy was made.

On reference, the master found the plaintiffs had failed to establish their case by a preponderance of the evidence. He also found the defendants had not established by their proof that the contract had been terminated. The recommendation was dismissal of the complaint. Those findings caused the plaintiffs to change their position in mid-suit. The chancellor permitted them to abandon their effort to have the deed declared a mortgage and allowed them to base their attempt at recovery of the property on trying to make the defendant specifically perform his contract obligation. To this amendment the defendant answered by reiterating his allegations of plaintiffs' defaults, nonwaiver thereof, declared forfeiture and their becoming his tenants by the oral agreement. A separate affirmative defense averred default by plaintiffs as tenants through nonpayment of rent, and defendant asked for a decree vesting ownership in him.

The chancellor heard the cause upon the pleadings, the evidence as reported by the master and the exceptions to his report. The findings of fact embodied in the decree by the chancellor accorded with those found by the master

in regard to the plaintiffs' failure to prove the deed was intended as a mortgage, and also, in that the defendants had failed to establish by a preponderance of the evidence that the contract had been terminated. The chancellor then found the contract had not been terminated and was in full force and effect. He cast an account between the parties, found plaintiffs were ready and willing to pay the amount found on the accounting. Ten days were given them to pay the sum into court; when that was done the defendant was to deed the fee to the plaintiffs, and if he would not, the master was to do so for him. If the required payment was not made within the ten days, the plaintiffs were out and the defendant was to retain title. The money was paid within the time set, and the decree would have become executed had not this appeal been taken and a *supersedeas* issued.

It is charged here that the chancellor erred in finding the contract for deed remained in full force and effect down to and on the date of the decree. This involves collateral allegations of error: In finding the quarterly payments constituted payments of interest and not of rent subsequent to May 22, 1940; that defendant waived the critical factor of time established by the contract for payments of principal and interest by "indulging" the plaintiffs; and that defendant had refused to convey the premises to plaintiffs; finding defendants failed to prove by a preponderance of the evidence that any notice of forfeiture was given; and that plaintiffs had proved the allegations to their amendment wherein they adopted the specific performance theory.

The master and the chancellor found the contract had never been terminated by the defendant; the former to the time of his report, August 1, 1947, the latter as of the day of the decree, December 10, 1947. Both being in accord thereon as of August 1, 1947, and no act or statement of either of the parties, or of the court, having inter-

vened between then and the day of the decree to alter that finding, the accord carried to the latter date. The evidence on whether the defendant terminated the contract was conflicting; therefore, when the master and the chancellor are in accord on a finding of fact embodied in the report and decree, that finding will not be disturbed by a court of review unless it is against the manifest weight of the evidence. (*Day* v. *Wright,* 233 Ill. 218; *Douglas Lumber Co.* v. *Chicago Home for Incurables,* 380 Ill. 87.) The finding is not against the manifest weight of the evidence.

The pleadings did not require the master to find whether the nonterminated contract was in full force and effect, and he did not do so. The chancellor, after permitting the amendment which generated that issue, had to decide it. He did so on the pleadings, the evidence contained in the master's report and exceptions thereto, and found that as of the day of the decree and prior thereto the contract was in full force and effect. Never having heard the witnesses, his finding on that issue need not have the manifest weight of the evidence against it before it will be disturbed by a reviewing court. (*Seely* v. *Rowe,* 370 Ill. 336.) The evidence on this issue was also conflicting, but analysis discloses that the preponderance thereof supports the finding.

The defendants said the plaintiffs cannot have specific performance even though the chancellor rightly found the contract to be in full force and effect, for they have not shown the required continued readiness, willingness and ability to perform their part of the contract; and that they also have completely performed all the conditions at the time and in the manner demanded therein. The burden is upon the vendee in a suit for specific performance to show performance upon his part, or that he was ready, able and willing to do so, but was prevented by the vendor. (*Stagman* v. *Lasson,* 345 Ill. 482.) Where time is made the essence of the contract, the general rule appears to be that a tender of performance in some form, within the contract

time, must be made as a condition precedent to bringing suit. It is much more certain that a tender is not necessary if it appears the vendor puts himself in an attitude of default or resists the performance by insisting he is not bound by the contract. An actual tender is unnecessary where it would be a useless act. All the plaintiff need do under such conditions is to place himself in favor with the court by pleading his readiness, willingness and ability to perform on command. (49 Am. Jur., Specific Performance, secs. 143, 144.) Here, the action of the defendant in joining with the plaintiffs in the elimination of the essential element of time, tolling them on by the statement of the nonnecessity of new papers after May 22, 1940, and acceptance of the interest payments, certainly carried the performance time by plaintiffs to the time of pleading. Plaintiffs' tender of performance was all that was required to meet the precedent conditions, for any prior tender of performance subsequent to May 22, 1940, would have been a useless act under the defendant's own admissions and claims. Defendant also contends that where time is made the essence of a contract for the conveyance of real estate and the payment of the money and the delivery of the deed are to be done at a fixed time, those engagements are mutually dependent; one party cannot compel performance by the other without first tendering performance on his part, citing *Miller* v. *Shea,* 300 Ill. 180. The nullification of the condition making time the essence of their contract destroyed here the applicability of the rule requiring actual tender.

Defendant believes that compelling him to specifically perform the contract will be a highly inequitable act because the involved property had materially increased in value since the contract was made in 1935, and since May 22, 1940. The cases cited in support of the contention do not support it, for each is predicated upon controlling facts different from those now confronting the court. The chan-

cellor found in effect that the plaintiffs, while they were performing their part of the contract by the payment of interest and taxes, were not speculating on whether the property would increase in value over the intervening years between 1935 to 1940 and from then to the institution of suit. Whether the contract is a fair one or works an unconscionable hardship is generally determined with reference to the time it was made, unless the delay in performance is caused by the one seeking performance. The mere fact there has been a decrease or increase in the value of the involved property since the contract was made will not of itself warrant a refusal to compel specific performance, where circumstances indicating fraud or bad faith are absent. (*Anderson* v. *Anderson,* 251 Ill. 415; *Keogh* v. *Peck,* 316 Ill. 318.) The chancellor found the delay in performance of the contract to a time beyond the terminal date of May 22, 1940, was not brought about by the plaintiffs alone, for it was the result of the mutual acts of the defendants and plaintiffs. Where all parties to the contract had, at the time it was made in 1935, equal means of knowledge as to the probability of such rise in value, and the contract is otherwise valid, fairly entered into and for sufficient consideration, equity will grant the specific performance asked. (*Anderson* v. *Anderson,* 251 Ill. 415.) The knowledge of the parties and the character of the contract terms contribute to the creation of the situation calling for the application of the above rule, unless some other and controlling equitable rule is successfully invoked by the defendant.

Defendant attempts to invoke another equitable rule in order to forestall his being compelled to specifically perform; it is the one of *laches.* To do so he necessarily had to predicate it on his being free from any fault in delaying the consummation of the contract to this late day. He also had to rest his plea upon the proposition he became liable to be subjected to enforced compliance on the named due

date of the contract, May 22, 1940, and the plaintiffs waited over seven years to institute enforcement proceedings. The chancellor, however, found the contract continued in full force and effect beyond that date by reason of the mutual acts of the parties, nullifying the provision making time the essence of the contract. No forfeiture, according to the chancellor, was ever declared; plaintiffs continued in possession, paid the interest and taxes, and whatever delay occurred in the consummation of the contract could only be attributed to those mutual acts and not to lone acts of plaintiffs, who never had any knowledge the defendant would repudiate his contract until just before the initial action was commenced in July, 1946. Where time is not of the essence of the contract, equity requires that the seeker of specific performance shall not be guilty of unreasonable delay. "When a contract is not barred by any statute of limitations and has been acted on for a number of years and not repudiated by the defendant until a brief time before suit to enforce it is instituted, a court of equity will not deny relief on the ground of *laches.*" (49 Am. Jur., Specific Performance, sec. 73; see, also, *Stiger* v. *Bent,* 111 Ill. 328; *Coryell* v. *Klehm,* 157 Ill. 462.) Any delay caused by act of the defendant will not constitute *laches* as against plaintiffs, nor will any delay which was acquiesced in by him. A plaintiff cannot be charged with *laches* until he has knowledge that his contract rights are being disputed by the defendant. (49 Am. Jur., Specific Performance, sec. 74.) The defendant erroneously invoked a rule that is not applicable to the facts of the case.

The chancellor did not err in the exercise of his discretion when he decreed specific performance of the contract, for the equities of the case, as divulged by the pleadings and proof, clearly support the decree. The decree of the circuit court of Stephenson County is affirmed.

*Decree affirmed.*